J4MTLI1

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     JI LI, JIANHUI WU, BIN ZHANG,
3    DE PING ZHAO and KAI ZHAO,

4                  Plaintiffs,
                 v.                     14 CV 10242 (AJN)
5
     ICHIRO SUSHI, INC., et al.,
6
                  Defendants.
7    ------------------------------x
     ROBERTO HIDALGO,
8
                  Plaintiff,
9                v.                     15 CV 414 (AJN)

10   ICHIRO SUSHI, INC., et al.,

11                Defendants.
     ------------------------------x
12                                      April 22, 2019
                                        9:30 a.m.
13
     Before:
14                     HON. ALISON J. NATHAN,

15                                            District Judge

16                          APPEARANCES

17   TROY LAW
          Attorneys for Plaintiffs Ji Li, Jianhui Wu, Bin Zhang, De
18   Ping Zhao and Kai ZhaO  (14 CV 10242)
     BY:  AARON SCHWEITZER
19
     CILENTI & COOPER
20        Attorneys for Plaintiff Roberto Hidalgo  (15 CV 414)
     BY:  PETER COOPER
21
     LAW OFFICES OF DAVID YAN
22        Attorneys for Defendants Ichiro Sushi, New Ichiro Sushi
     and Juhang Wang
23   BY:  DAVID YAN

24   XUE & ASSOCIATES
          Attorneys for Defendants Jian Ping Chen and Ichiro Asian
25   Fusion
     BY:  BENJAMIN XUE
```

J4MTLI1

 1            (In open court)

 2            THE COURT:  Good morning, counsel.  This is the

 3    consolidated case of 14 CV 10242 and 15 CV 414.

 4            Counsel in 14 CV 10242, I'll take your appearances in

 5    that matter, starting with the plaintiffs.

 6            MR. SCHWEITZER:  Good morning, your Honor, Aaron

 7    Schweitzer for those plaintiffs.

 8            THE COURT:  Good morning, Mr. Schweitzer.

 9            And for the defendants in those cases, representing

10    Mr. Wang and New Ichiro Sushi.

11            MR. YAN:  David Yan on behalf of New Ichiro Sushi and

12    Juhang Wang.  Good morning, your Honor.

13            THE COURT:  Good morning, Mr. Yan.

14            This is Mr. Wang?

15            MR. YAN:  This is Mr. Wang.

16            THE COURT:  Good morning, Mr. Wang.

17            And on behalf of Jian Ping Chen and Ichiro Asian

18    Fusion?

19            MR. XUE:  Good morning, your Honor, Benjamin Xue.  The

20    lady standing to my left is Jian Ping Chen.

21            THE COURT:  Good morning, Mr. Xue, and good morning,

22    Ms. Chen.

23            15 CV 414, on behalf of the plaintiff Mr. Hidalgo.

24            MR. COOPER:  Good morning, Judge, Peter Cooper.

25    Mr. Hidalgo is in the front row with Carlos Cruz, who will be

J4MTLI1

```
 1    interpreting.  He's a certified state interpreter.

 2              THE COURT:  Good morning Mr. Cooper, good morning,

 3    Mr. Hidalgo.

 4              And on behalf of New Ichiro Sushi?

 5              MR. YAN:  David Yan for New Ichiro Sushi.

 6              THE COURT:  Good morning again, Mr. Yan.

 7              All right.  We are here to proceed to trial in this

 8    non-jury matter.  I will ask all counsel to confirm that they

 9    are prepared to proceed to trial.

10              MR. COOPER:  Yes, Judge.

11              MR. SCHWEITZER:  Yes, Judge.

12              MR. YAN:  Yes, your Honor.

13              MR. XUE:  Yes, your Honor.

14              THE COURT:  The only initial matter I wanted to take

15    up before getting started is just to confirm, Mr. Schweitzer,

16    whether or not following my ruling with respect to plaintiff

17    Li, your request -- your late request for testimony by video

18    conference, will Mr. Li be present or no?

19              MR. SCHWEITZER:  Mr. Li was unable to obtain a visa

20    and will not be present.

21              Mr. Jian Ping and Zhao De Ping will be able to testify

22    as to their period of employment.  They were employed at the

23    same time as him.

24              THE COURT:  Well, we'll see about that.  It's not

25    included in the direct testimony, right?
```

1          MR. SCHWEITZER:  No, because when they gave their

2     affidavit for direct testimony, Mr. Li had given his own

3     affidavit, but since Mr. Li is not able to appear --

4          THE COURT:  This is precisely why you needed to have

5     acted on this far sooner than you did.  The idea that, in the

6     timing that you did before trial, seeking making what appears

7     to have been either an uninformed representation or a

8     misrepresentation to the Court as to his inability to return to

9     United States, both of which are problematic -- one is

10    obviously more problematic, but both are problematic, but had

11    you -- well, had that been true, then steps could have been

12    taken in a way that would be fair to the other side to

13    supplement, potentially, other testimony.  But you haven't done

14    that.

15         So the trial process is the direct testimony that's

16    been exchanged comes in.  There will be cross-examination, and

17    you may redirect in the scope of that cross.  I don't see

18    how -- I suppose if they cross him on those other plaintiffs on

19    something that pertains to Mr. Li, you might have the

20    opportunity for redirect.  In the absence of that, you

21    wouldn't.

22         So given that, in light of what counsel submitted on

23    April 17, 2019, indicating anticipated time goals for each of

24    the witnesses, in the absence of Mr. Li testifying, it adds up

25    to 16 hours total.  So what I intend to do is to give each

J4MTLI1

1     party the allotted hours in their time frame.  So it is

2     essentially eight hours for the plaintiffs, eight hours for the

3     defendants, but we'll make -- I will ask my law clerk to make a

4     further division among the plaintiffs and the defendants so

5     that you know exactly how many hours you've used up in the

6     course of it.  But essentially what I'm doing is providing you

7     the time that you have indicated and requested in the April 17,

8     2019 letter.

9          Any questions about that?

10          So when you are examining the a witness, time ticks

11     off your clock, and whether it's cross-examination or redirect,

12     when it is counsel for one party examining the witness, that's

13     when your time ticks off.  And that just helps ensure that we

14     work efficiently and move forward efficiently in the time

15     allotted.

16          Any preliminary matters before we get under way?

17          MR. SCHWEITZER:  No.

18          MR. COOPER:  Nothing, Judge.

19          MR. XUE:  No, your Honor.

20          THE COURT:  All right.  Thank you.

21          As we discussed, I don't generally have opening

22     statements and there were no opening statements requested.  I

23     have reviewed pretrial materials that you have submitted, so

24     I'm ready to turn to witnesses.

25          I also indicated that I have no concerns with taking

1    witnesses out of order.  I do have, as I said, your April 17,

2    2019 letter, my thanks to counsel for working out an agreeable

3    witness list.  And so according to that, go ahead.

4                 MR. COOPER:  Any non-party witnesses I believe should

5    be excluded.  I don't know if they're in the courtroom or not,

6    but they should not be for the first witness.

7                 THE COURT:  Any non-party witnesses who would testify.

8     Are there any?

9                 MR. YAN:  There's Yuyi Wang, he's present in the

10   courtroom, we can.

11                THE COURT:  He's a party, correct?

12                MR. YAN:  He is not a party.

13                THE COURT:  I see.

14                MR. YAN:  Once starts the testimony, he could be

15   sequestered and he could sit outside.

16                THE COURT:  Yes.

17                Anyone else?

18                So yes, Mr. Yuyi Wang will remove himself from the

19   courtroom once the testimony begins, which I think is

20   momentarily.

21                Counsel, I mentioned this, the April 17, 2019 letter

22   indicates witnesses by their anticipated order.  Just because

23   it's difficult for me to process orally the names as you say

24   them, and I presume for the court reporter as well, what I ask

25   you to do if you are stating a name, at least for the first

J4MTLI1                        Chen - Direct

1   time, to reference the number on the April 17, 2019 list so

2   that I can make sure I have firmly in mind who you're talking

3   about, and the court reporter could have it as well, and I'll

4   get the court reporter a copy of the April 17, 2019 letter.

5              THE COURT:  So with that, are plaintiffs calling the

6   first witness, the defendant witness, or is that an

7   out-of-order witness?

8              MR. XUE:  It is out of order, your Honor.  The Ichiro

9   Asian Fusion and Jian Ping Chen is calling the first witness,

10  Jian Ping Chen, your Honor.

11             THE COURT:  Thank you, Mr. Xue.

12             Ms. Chen may come forward.

13   JIAN PING CHEN,

14       called as a witness by the Defendants,

15       having been duly sworn, testified as follows:

16  DIRECT EXAMINATION

17  BY MR. XUE:

18  Q.  Ms. Chen, what's your home address?

19             THE COURT:  Sir, just a moment.  Do you have the

20  declaration?

21             MR. XUE:  Yes.

22             May I?

23             THE COURT:  Yes, please.

24             Mr. Xue, have you marked that as a trial exhibit?

25             MR. XUE:  I would like to mark it as Trial Exhibit 1

J4MTLI1                          Chen - Direct

1    for defendant Ichiro Asian Fusion.

2              THE COURT:  So Defendant Asian Fusion --

3              MR. XUE:  Can I use character instead of numbers?

4              THE COURT:  That's fine.

5              MR. XUE:  Trial Exhibit A, please.

6              THE COURT:  So Defendant Ichiro Asian Fusion Exhibit A

7    is the declaration, direct testimony by Ms. Chen.

8              Ms. Chen, have you had an opportunity to review your

9    declaration recently?

10             THE WITNESS:  Yes.

11             THE COURT:  And did you sign that declaration?

12             THE WITNESS:  Yes, I did.

13             THE COURT:  What date did you sign it, please?

14             THE WITNESS:  February 6, 2019.

15             THE COURT:  And have you had a recent opportunity to

16   rereview your declaration?

17             THE WITNESS:  Yes, I did review it.

18             THE COURT:  Are there any mistakes or errors that you

19   would like to point out to me before I ask you to affirm again

20   under the penalty of perjury that everything you say in that

21   declaration is true and correct?

22             THE WITNESS:  Everything here is true.

23             THE COURT:  Okay.  So just formally then, no errors to

24   point out, correct?

25             THE WITNESS:  Yeah, I just say that it's -- I'm a

J4MTLI1                          Chen - Direct

1   female, it's not a male, I don't understand on that.  And I

2   really in my total life I don't see them, and I don't know them

3   at all.

4              THE COURT:  We'll get into a second, it's just a

5   question of whether that declaration represents your accurate

6   testimony.

7              THE WITNESS:  Yes.

8              THE COURT:  Yes?

9              THE WITNESS:  Yes.

10             THE COURT:  And you swear under the penalty of perjury

11  everything contained in that document is true and correct?

12             THE WITNESS:  I swear.

13             THE COURT:  Okay.  Thank you.

14             Mr. Xue, would you like to move the admission of New

15  Ichiro Sushi Defendant Exhibit A into evidence?

16             MR. XUE:  Your Honor, I would like to move Ichiro

17  Asian Fusion and Jian Ping Chen's Trial Exhibit A into

18  evidence.

19             THE COURT:  Thank you.  Any objections from counsel?

20             MR. SCHWEITZER:  No.

21             THE COURT:  Mr. Xue, do you have an extra copy of the

22  declaration?

23             MR. XUE:  Your Honor, I apologize, I did not realize

24  this is how trial --

25             THE COURT:  That's why I'm walking everybody through

J4MTLI1                          Chen - Direct

1    the first one and you'll see how it goes.

2                MR. XUE:  Your Honor, if I may, because I premarked my

3    Trial Exhibit A through N, this is not one of it, it's

4    submitted separately, so to avoid confusion, I assume the Court

5    has my exhibit book, A through N.

6                THE COURT:  I do.

7                MR. XUE:  Maybe mark it as.

8                THE COURT:  How about Exhibit O?

9                You said the current Exhibits A through N as in Nancy,

10   correct?

11               MR. XUE:  Yes.

12               THE COURT:  So for clarity, Ms. Chen's exhibit is

13   Defendant Ichiro Asian Fusion Exhibit O.  And are any exhibits

14   being admitted with this declaration?

15               MR. XUE:  No, your Honor.

16               THE COURT:  All right.  Thank you.

17               So Mr. Schweitzer, Ms. Chen is your witness for

18   cross-examination.

19               And to be clear, Defendant's Exhibit, Asian Ichiro

20   Sushi Exhibit O, is admitted as the direct testimony of

21   Ms. Chen, and that is her February 6, 2019 declaration is

22   admitted.

23               (Defendant's Exhibit Ichiro Asian Fusion O received in

24   evidence)

25               THE COURT:  Mr. Schweitzer, your witness.

J4MTLI1                           Chen - Cross

1    CROSS-EXAMINATION

2    BY MR. SCHWEITZER:

3    Q.  Good morning, Ms. Chen, thank you for being here today.  I

4    understand it was something of a trip.

5           You were asked a question on direct there was never an

6    answer to.  What is your current home address?

7    A.  1412 East Cone Boulevard, Greensboro, North Carolina,

8    27405.

9    Q.  And you are here representing a corporation operating a

10   restaurant located in White Plains, New York?

11   A.  Yes.

12   Q.  How do you operate the restaurant in White Plains, New York

13   from North Carolina?

14          MR. XUE:  Objection, outside of direct, your Honor.

15          THE COURT:  Overruled.

16   A.  This is before I was running a business for three or four

17   years, and after that there no business, I have to wait for the

18   other one to leave.

19   Q.  When was the last time you ran the business in White

20   Plains, New York?

21   A.  I would say around four or five years ago.

22   Q.  Around 2014?

23   A.  Around 2015, 2016.

24          THE COURT:  The business you're talking about is which

25   business?

J4MTLI1                          Chen - Cross

1              THE WITNESS:  This is in White Plains.

2              THE COURT:  What is it called?

3              THE WITNESS:  Ichiro Asian Fusion.

4              THE COURT:  Okay.  And I'm sorry, you longer run it,

5    is that correct?

6              THE WITNESS:  No longer.

7              THE COURT:  And you ran it from when until when?

8              THE WITNESS:  When I was open in 2011 until 2015 or

9    '16, middle of the '16.

10   BY MR. SCHWEITZER:

11   Q.  The middle of 2016, did you sell the business or did you

12   have somebody come in and run it for you?

13   A.  Somebody come and run it.  We cannot sell because the owner

14   cannot sell to other people.

15   Q.  Who is the owner?

16   A.  Owner is the corporation, so I cannot remember the long

17   name for them.

18   Q.  Are you familiar with an individual named Hui Chen, H-U-I

19   C-H-E-N?

20   A.  I don't know him.

21   Q.  In your direct testimony affidavit you specified that

22   you're the president of Ichiro Asian Fusion, Incorporated.  Do

23   you have any ownership interest in Asian Fusion Incorporated?

24   A.  I'm the owner and president of Asian Fusion, Inc.

25   Q.  You mentioned there's a separate owner.

J4MTLI1                        Chen - Cross

1   A.  No, no separate owner, I'm the only one.

2   Q.  You mentioned there was somebody who wouldn't let you sell.

3   A.  Yeah, the owner would not let me sell.

4   Q.  The owner of Ichiro Asian Fusion, Incorporated would not

5   let you sell?

6   A.  No, the owner, the landlord.

7   Q.  So the landlord would not let you sign your lease?

8   A.  Yes.

9   Q.  So do you still have an ownership interest in Ichiro Asian

10  Fusion, Incorporated?

11  A.  Yes, right now still owner.

12  Q.  And 100 percent?

13  A.  Yes.

14  Q.  And you've had 100 percent of the ownership interest in

15  Ichiro Asian Fusion, Incorporated since 2011?

16  A.  Yes.

17  Q.  Have you ever had any business partners?

18  A.  No.

19  Q.  Are you familiar with a restaurant located at 1694 Second

20  Avenue, New York, New York, 10128?

21  A.  I don't know.

22  Q.  Have you ever been present in that restaurant?

23  A.  No, sir, I don't know that restaurant.

24  Q.  Have you ever operated the telephone for that restaurant?

25  A.  No, sir, I don't know.

J4MTLI1                          Chen - Cross

1    Q.  Have you ever acted as a cashier at that restaurant?

2    A.  Never.

3    Q.  Have you ever given employees cash to deal with that

4    restaurant?

5    A.  Sir, I don't know them, how can I pay them?  I don't know

6    them at all in my whole life.

7    Q.  Does Ichiro Restaurant in White Plains have a menu?

8    A.  Yes.

9            MR. XUE:  Objection.  Outside of direct, your Honor.

10           THE COURT:  Overruled.

11           MR. SCHWEITZER:  May I approach, your Honor?

12           THE COURT:  You may.

13           (Interruption)

14           THE COURT:  I'll take that.  In case any devices ring

15   during the course of trial, I will hold onto them until the end

16   of trial.  I gave a clear warning about that, Mr. Yan.

17   Q.  I'm showing you a second page of what's been premarked for

18   identification as Plaintiff's Exhibit 17.

19           Do you recognize that document?

20           THE COURT:  Mr. Schweitzer, I need you at the

21   microphone so I can hear you, and I recognize because of the

22   ELMO issue there will be some back and forth if you need to.

23   Q.  I'm showing you the second page of the document that's been

24   premarked for identification as Plaintiff's Exhibit 17.  Do you

25   recognize that document?

1   A.  Yes, this is our restaurant menu.

2            THE COURT:  Just a second.  I don't have an Exhibit 17

3   in my binder, do I?  I see up to Exhibit 15.

4            I have it.

5   Q.  On the right most panel of that paper there's a logo

6   Ichiro, correct?

7   A.  Yes, the logo.  I hired the sign company to do it.

8   Q.  I'm sorry?

9   A.  The logo?  Yes, we gave it to the sign company to do it for

10  us, yes.

11  Q.  I didn't quite catch that.  You gave it to sign something?

12  A.  Yeah, the sign company, they do it for us, the menu.

13  Q.  The menu, the sign company?

14  A.  Right.

15  Q.  When did you do that?

16  A.  Just do the menu, we had to give the sign company to do our

17  menu, right, do the menu.

18  Q.  When did you have the sign company do your menu?

19  A.  What do you mean?

20  Q.  What year.

21  A.  2011.

22  Q.  That's been Ichiro Asian Fusion's logo since 2011?

23  A.  Yeah, we prepared on that at that time.

24  Q.  At this time I would like to move Plaintiff's Exhibit 17

25  into evidence.

J4MTLI1                           Chen - Cross

1              MR. XUE:  Objection, your Honor, there's no value in

2       seeing this, and also outside of the direct.

3              THE COURT:  Overruled.  It's appropriate

4       cross-examination in light of the direct testimony of the

5       witness.

6       Q.  I'm now showing you what's been premarked for

7       identification as Plaintiff's Exhibit 16.  Do you recognize

8       that?

9       A.  This is our restaurant.

10      Q.  Specifically that's a photograph of the exterior of the

11      restaurant, correct?

12      A.  Yes.

13      Q.  And it shows the signage that you're using for the

14      restaurant?

15      A.  Yes, we are using it.

16      Q.  And has that been the signage you've been using for the

17      restaurant since 2011?

18      A.  I believe in 2011.

19      Q.  That's the same style that appears on the menu, correct?

20      A.  I don't know.

21      Q.  To be fair, I did take Exhibit 17.  Would you like it back

22      to compare?

23      A.  That's fine, but this is our logo on that.

24      Q.  Before you used that logo, did you have to obtain any

25      permission?

J4MTLI1                         Chen - Cross

1    A.  That I don't know, we just give the sign company and tell

2    them we want them to do the design, so they do it for us.

3    Q.  What sign company did you use?

4    A.  I really forget about that.

5    Q.  And did you pay the sign company any money?

6    A.  Of course.

7    Q.  How much?

8    A.  I had to check it out on my book.  Right now I cannot

9    realize how much.

10   Q.  And what exactly were you paying them for?

11   A.  They do for us the menu and the sign for us.

12   Q.  Can you state with certainty that you were not paying for

13   permission to use this particular style of signage?

14   A.  Of course we pay for that.

15   Q.  My question goes to whether you were using -- whether you

16   were paying for permission to use this particular style of

17   logo.

18   A.  I don't know, I don't know that I paid, but I hired them to

19   do the full design for us.

20   Q.  To your knowledge, has your restaurant, Ichiro Asian

21   Fusion, been reviewed in a newspaper?

22           MR. XUE:  Objection.

23           THE COURT:  Overruled.

24   A.  I think -- I really don't know, they just put on the

25   newspaper, what can I -- those people, they write, we cannot

J4MTLI1                        Chen - Cross

1    control the people, what they doing, just like they suing me, I

2    have nothing to do with that.

3    Q.  That's not an answer to my question.  Yes or no, was Ichiro

4    Asian Fusion reviewed in a newspaper?

5    A.  I have no idea.

6              THE COURT:  You have no knowledge whether the

7    restaurant was ever reviewed in the newspaper?

8              THE WITNESS:  I do have knowledge.

9              THE COURT:  And was it?

10             THE WITNESS:  It was.

11             THE COURT:  Okay.

12   Q.  I'm showing you what has been marked as Plaintiff's Exhibit

13   15 for identification.  Is that that review?

14   A.  Yeah, I think what you say is this one.

15   Q.  Turning to the second paragraph of that review --

16             MR. XUE:  Your Honor, the document is not in evidence.

17             THE COURT:  Sustained.

18             MR. XUE:  Hearsay document.

19   Q.  Did you give a statement to the reviewer who wrote this

20   review?

21   A.  No, I did not.

22   Q.  Have you seen this review before?

23   A.  Since you gave it to me, yes, I saw it.

24   Q.  I will ask that Exhibit 15 be moved into evidence.

25             MR. XUE:  Objection.

J4MTLI1                          Chen - Cross

1              THE COURT:  Grounds?

2              MR. XUE:  Hearsay, your Honor, also --

3              THE COURT:  Start with the hearsay objection,

4    Mr. Schweitzer.

5              MR. SCHWEITZER:  This is a -- it's not being offered

6    for the truth of the matter asserted.

7              THE COURT:  What is it being offered for?

8              MR. SCHWEITZER:  So that I can ask questions about it

9    so I can get context to what appears in it not for the truth of

10   the words in the document itself.

11             THE COURT:  Sustained.

12             MR. XUE:  Your Honor, I also ask the plaintiffs'

13   counsel to speak up.  I have a difficult time understanding

14   him.

15             THE COURT:  Yes, please, Mr. Schweitzer, close to the

16   microphone and keep your voice up.

17             Anyone, don't hesitate to let me know if you have any

18   difficulty either hearing or understanding.

19             MR. SCHWEITZER:  I'm having trouble remembering, did I

20   ask if Exhibit 16 be moved into evidence?

21             THE COURT:  No, you moved 15 and 17.

22             MR. SCHWEITZER:  Then I ask that Exhibit 16 be

23   admitted.

24             MR. XUE:  I object.  The document was never disclosed

25   during discovery.  It's also not relevant, also outside our

J4MTLI1                         Chen - Cross

1    direct.

2              THE COURT:  When was this document disclosed,

3    Mr. Schweitzer?

4              MR. SCHWEITZER:  This document is a Google Maps image

5    of the exterior of Ichiro Fusion.  It was posted to the docket

6    in January of 2018.

7              THE COURT:  When did discovery close?

8              MR. SCHWEITZER:  I don't remember off the top of my

9    head when discovery closed.

10             THE COURT:  Did you disclose this during the course of

11   discovery?

12             MR. SCHWEITZER:  I believe this was disclosed during

13   the course of our cross motion on summary judgment.

14             THE COURT:  So after the close of discovery?

15             MR. COOPER:  Yes.  At that time it was not objected

16   to.  It's been on the docket for more than a year.

17             THE COURT:  There's not an objection to it in the

18   joint pretrial order?

19             MR. XUE:  There is an objection in JPTO.  It's a

20   Google Maps photo.  That's an objection to the proper --

21   there's no foundation laid for the document either.

22             THE COURT:  I would overrule the foundation objection

23   because the witness presumably knows what the storefront of the

24   restaurant looks like, did identify it, so that's not a

25   problem, certainly counsel has been aware of it.  But what I

J4MTLI1                         Chen - Cross

1   want to know is why it wasn't disclosed during the course of

2   discovery.

3        MR. SCHWEITZER:  I believe this document was actually

4   created in our -- taken off of Google Maps on November 29,

5   2018.  It wasn't available in discovery.

6        THE COURT:  Did you provide it as a supplement to your

7   disclosures?

8        MR. SCHWEITZER:  It's part of a formal supplement to

9   Rule 26 disclosures.  I don't believe so.  As I said, it's been

10  on the docket for more than a year.  It's counsel is well aware

11  of it.

12       THE COURT:  So the principle that you would like me to

13  apply to everyone is that if it has been docketed, even if not

14  produced during the course of discovery, despite an objection

15  for that purpose contained in the joint pretrial order, that

16  everything comes in?

17       So my discovery deadline was meaningless?  How should

18  we proceed here so that there are clear rules in place?

19       MR. SCHWEITZER:  I'll withdraw the exhibit.

20       THE COURT:  Thank you.

21       MR. SCHWEITZER:  I don't believe I have any further

22  questions for this witness.

23       THE COURT:  Just to be clear, so Exhibit 16 is

24  withdrawn, Exhibit 17 I did admit, and Exhibit 15 I sustained

25  the objection and is not admitted.

J4MTLI1                         Chen - Redirect

1                    (Plaintiff's Exhibit Li 17 received in evidence)

2                    THE COURT:  Redirect, Mr. Xue?

3                    MR. XUE:  Yes, your Honor.

4                    MR. COOPER:  Before redirect, could I ask one or two

5       questions of this witness?

6                    THE COURT:  Yes.

7       CROSS-EXAMINATION

8       BY MR. COOPER:

9       Q.  Good morning, Ms. Chen, my name is Peter Cooper.  I have a

10      couple of questions.  Do you go by an American name in your

11      everyday interactions?  Do you have Americanized name or

12      nickname.

13      A.  People call me Jan.

14      Q.  Jan?

15      A.  Yes.

16                   MR. COOPER:  Thank you very much.

17      REDIRECT EXAMINATION

18      BY MR. XUE:

19      Q.  Ms. Chen, who came up with the corporate name Ichiro Asian

20      Fusion, Inc.?

21      A.  We just going to the company, we talk about that, and we

22      were trying to tell them this is Ichiro, very famous in Japan,

23      and also is the best first son.  We were very exited for this

24      man, the name, so we just coming out for this name.

25      Q.  So Ichiro is a baseball player's name and also means --

J4MTLI1                         Chen - Redirect

1          MR. SCHWEITZER:  Objection.

2          THE COURT:  Sustained.  No rephrasing of the

3    testimony.  Next question.

4    Q.  Do you know what Ichiro means in Japanese?

5    A.  Yes.

6    Q.  What's the meaning of Ichiro?

7    A.  The first son of Ichiro.

8          THE COURT:  You're saying the meaning of Ichiro is the

9    first son of Ichiro?

10         THE WITNESS:  Yes.

11         THE COURT:  Okay.

12   Q.  What does Ichiro mean in Japanese?

13   A.  Ichiro means the name of the -- Ichiro, that's the name of

14   Ichiro, how is -- the name of Ichiro is the person's name.

15   Q.  Okay.  And you said something about first son, what does

16   that mean?

17   A.  This is the first son of Ichiro, they're very -- the name,

18   how we describe, because he's the first son of Ichiro, he's

19   very famous, so everybody know that.

20   Q.  You testified that you gave a sign company to do the menu

21   and sign for your company, right?

22   A.  Yes.

23   Q.  When did you do that?

24   A.  2011 when we were starting over, renovating and preparing

25   to do on the menu.

J4MTLI1                        Chen - Redirect

1   Q.  Do you know why did the sign company write "Ichiro" in that
2   way?
3              MR. SCHWEITZER:  Objection calls for speculation.
4              THE COURT:  Overruled.
5   A.  No, I have no idea.
6   Q.  The plaintiff's counsel asked you whether your company paid
7   any commission to use the name.  Do you know what does that
8   mean "commission?"
9   A.  I give someone the money to the pay the commission, but we
10  just hiring sign company, they did it for us.
11  Q.  So you did not pay any commission, right?
12  A.  No.
13             MR. SCHWEITZER:  Objection.
14             THE COURT:  Sustained.  It was a misrepresentation of
15  the earlier question, which was did she pay anyone for
16  permission.
17             MR. XUE:  Permission.  I thought she said commission.
18             THE COURT:  I understand there was difficulty.  For
19  clarity, the question earlier was:  Did she pay anyone for
20  permission to use the name and logo?
21             MR. XUE:  I see.
22             THE COURT:  And Ms. Chen, your answer to that is what?
23             THE WITNESS:  I did pay the sign company.
24             THE COURT:  But other than the sign company for
25  physically making the sign, did you pay anyone else?

J4MTLI1                        Hidalgo - Direct

1              THE WITNESS:  No one.

2    BY MR. XUE:

3    Q.  Do you have any relationship with the Ichiro Sushi or

4    Ichiro restaurant on Second Avenue in Manhattan?

5    A.  No, don't know them.

6              MR. XUE:  No more questions.

7              THE COURT:  Thank you.

8              All right, you may step down.  Thank you.

9              THE WITNESS:  Thank you, your Honor.

10             THE COURT:  Mr. Cooper, do you want to call your

11   witness?

12             MR. COOPER:  Thank you, Judge.

13             Call Robert Hidalgo.

14             THE COURT:  Mr. Hidalgo may come forward.

15    ROBERTO HIDALGO,

16        called as a witness by the Plaintiff,

17        having been duly sworn, testified as follows:

18   DIRECT EXAMINATION

19   BY MR. COOPER:

20             MR. XUE:  Excuse me, your Honor, before we proceed,

21   may my client be excused?

22             THE COURT:  Yes.

23             MR. XUE:  Thank you, your Honor.

24             THE COURT:  Question for the interpreter, could you

25   state your name, please?

J4MTLI1                         Hidalgo - Direct

1              THE INTERPRETER:  Carlos Cruz.

2              THE COURT:  Thank you, Mr. Cruz.  And your native

3     language is?

4              THE INTERPRETER:  Spanish, actually.

5              THE COURT:  And how long have you been interpreting

6     between Spanish and English?

7              THE INTERPRETER:  20 years now.

8              THE COURT:  Have you previously been qualified as a

9     Spanish language interpreter in federal or state court?

10             THE WITNESS:  New York State Court system certified,

11    ma'am.

12             THE COURT:  Counsel, any objection to the

13    qualifications of this interpreter?

14             MR. YAN:  No, your Honor.

15             MR. XUE:  No.

16             THE COURT:  Thank you.  Mr. Cruz is qualified to

17    interpret between Spanish and English, and we will ask

18    Mr. Scott to administer the interpreter oath to Mr. Cruz.

19             (Interpreter sworn)

20             THE COURT:  Thank you, Mr. Cruz.

21             Mr. Cooper, you may proceed.

22             MR. COOPER:  Your Honor, I have marked Mr. Hidalgo's

23    original affidavit.  We have duplicate originals as Exhibit 12

24    for plaintiff Hidalgo.  It's what I anticipate would be the

25    last exhibit because we already have Exhibit 1 through 11

J4MTLI1                         Hidalgo - Direct

1    premarked.

2              THE COURT:  Thank you.  So it is marked plaintiff

3    Hidalgo Exhibit 12.

4              MR. COOPER:  May I approach?

5              THE COURT:  Please.

6              MR. COOPER:  Would you like me to inquire, your Honor?

7              THE COURT:  Go ahead.

8    BY MR. COOPER:

9    Q.  Good morning, Mr. Hidalgo.

10   A.  Good morning.

11   Q.  I would like you to just try to relax and listen to the

12   questions that are asked of you and do your best to answer them

13   today.

14   A.  Yes.

15   Q.  Do you recognize the document that we have handed you that

16   is marked Exhibit 12 with a yellow sticker on the first page?

17   A.  Yes.

18   Q.  Did you review that document with me and with the

19   assistance of someone who is fluent in Spanish as well as

20   English last week in my office?

21   A.  Yes.

22   Q.  Is there anything that you would like to add to that,

23   change about it, or take away from that, or does that correctly

24   and fully represent what you would like to tell the Court this

25   morning?

J4MTLI1                        Hidalgo - Direct

1    A.  No, this is fine.

2    Q.  Do you remember signing it?

3    A.  Yes.

4    Q.  If you look at the last page, can you identify your

5    signature?

6    A.  Yes.

7    Q.  Is that your signature?

8    A.  Yes.

9    Q.  Do you remember when you signed it?

10   A.  Yes.

11   Q.  When did you sign it?

12   A.  May 11.

13   Q.  What makes you think you signed it on May 11?

14           I'm going draw your attention to the last date above

15   your signature.

16   A.  This was January, January.

17   Q.  Just a couple of months ago, right, sir?

18   A.  Yes.

19   Q.  Do you remember coming to meet with me and talk about it

20   and go over it and sign that affidavit?

21   A.  Yes.

22           MR. COOPER:  Thank you very much, Judge.  With that

23   testimony --

24           THE COURT:  Just a moment.

25           Mr. Hidalgo, the declaration in front of me is in

J4MTLI1                         Hidalgo - Direct

1    English.  Am I correct that you don't read English?

2                THE WITNESS:  Yes.

3                THE COURT:  So, as you said earlier, you worked with a

4    Spanish interpreter in completing and then understanding and

5    signing this declaration, is that correct?

6                THE WITNESS:  Yes.

7                THE COURT:  So was there ever a Spanish version, or

8    just orally worked with an interpreter?

9                THE WITNESS:  Orally.

10               THE COURT:  Okay.  As you sit here now, do you

11   understand everything that's in this declaration?

12               THE WITNESS:  Yes.

13               THE COURT:  Okay.  And so Mr. Cooper, you're moving

14   Plaintiff's Exhibit 12 -- plaintiff Hidalgo's Exhibit 12 as

15   direct testimony.  Any accompanying exhibits?

16               MR. COOPER:  There is an exhibit attached to his

17   declaration or affidavit, which is I believe two photographs,

18   Judge.

19               THE COURT:  And that's Exhibit A, referenced in

20   paragraphs -- well, multiple paragraphs 8 through 12 in the

21   declaration.  And you're moving that as well, correct?

22               MR. COOPER:  Yes, Judge.

23               MR. YAN:  I object to exhibits to the declaration for

24   the foundation.

25               THE COURT:  Paragraph 8 says my attorney showed me

J4MTLI1                           Hidalgo - Direct

1    photos of an individual who I remember was one of the owners of

2    Ichiro Sushi and my boss.

3              Overruled.

4              Any other objections, Mr. Yan?

5              MR. YAN:  No, Judge.

6              THE COURT:  So plaintiff Hidalgo Exhibit 12 is

7    admitted as the direct testimony of Mr. Hidalgo along with the

8    two photographs attached as Exhibit A to the declaration.

9              Mr. Cooper, do those exhibits have separate trial

10   markings, or are we just going to call them 12A?

11             MR. COOPER:  Judge, just 12A to declaration of

12   Mr. Hidalgo, I do not believe they have separate trial

13   markings.

14             THE COURT:  Okay.  So 12 and 12A are admitted.  Thank

15   you.

16             (Plaintiff's Exhibit 12 and 12A received in evidence)

17             THE COURT:  Mr. Yan, your witness.

18             MR. YAN:  Your Honor, plaintiff rests?

19             MR. COOPER:  I rest.

20             MR. YAN:  Your Honor, I don't believe there's any

21   trial exhibits introduced by plaintiff at this moment.

22             THE COURT:  Well, just Exhibit A, the two photos

23   attached as Exhibit A, which I have admitted.

24             MR. COOPER:  Exhibit 12, Judge.

25             THE COURT:  Sorry, Exhibit 12.

J4MTLI1                          Hidalgo - Cross

1              MR. COOPER:  Exhibit 12A and 12.

2              THE COURT:  Correct.

3              MR. COOPER:  Thank you, Judge.

4   CROSS-EXAMINATION

5   BY MR. YAN:

6   Q.  Good morning, Mr. Hidalgo.

7   A.  Good morning.

8   Q.  My name is David Yan, I represent New Ichiro Sushi in this

9   matter.  When did you work for Ichiro Sushi?

10  A.  May of 2010.

11  Q.  Until when?

12  A.  October 2nd, 2014.

13  Q.  When did you work for New Ichiro Sushi?

14  A.  What?

15  Q.  When did you start to work for New Ichiro Sushi?

16  A.  From 2013 to 2014.

17  Q.  Approximately what month you start to work for New Ichiro

18  Sushi in 2013?

19  A.  January.

20  Q.  You worked in Ichiro Sushi on a part time basis, correct?

21  A.  Yes.

22  Q.  And was Wu Chen the owner of the Ichiro Sushi, correct?

23  A.  He was my boss, him.

24              THE COURT:  The witness is identifying the gentleman

25  sitting at the back table behind Mr. Yan.

J4MTLI1                        Hidalgo - Cross

1            THE WITNESS:  Yes, yes.

2            THE COURT:  Counsel, any objection to record

3    reflecting that the witness has identified Mr. James Wang or

4    Juhang Wang?

5            MR. COOPER:  No objection.

6    BY MR. YAN:

7    Q.  When you talked to this person, what's his name?

8    A.  I don't really know his name, but he was my boss also.

9    Q.  Do you know who was Hui Chen?

10   A.  No, the truth is I don't.

11   Q.  Have you ever spoken to Hui Chen when you worked in Ichiro

12   Sushi?

13   A.  No.

14   Q.  Have you request any letter from Hui Chen on your behalf

15   when you worked for Ichiro Sushi?

16   A.  Yes.

17   Q.  And why did you request a letter from Hui Chen when you

18   worked for Ichiro Sushi?

19   A.  I asked him for a letter to help identify myself at the

20   hospital is why I asked for the letter for that.

21   Q.  So why did you request a letter -- strike that.

22           Why did you request a letter from this gentleman

23   sitting at the table here?

24   A.  He actually made the letter, but the other guy is the one

25   who signed it, but they're both bosses.

J4MTLI1                           Hidalgo - Cross

1              THE COURT:  When you say both, you mean Mr. Wang, who

2      is sitting here, and someone named Hui Chen?

3              THE WITNESS:  Yes.

4              THE COURT:  Did you know who Hui Chen was?

5              THE WITNESS:  No.

6              THE COURT:  So how do you know he was a boss?

7              THE WITNESS:  Well, he would give me the letter but he

8      would take it to someone else to sign it and then he would

9      bring it back to me himself.

10             THE COURT:  When you say "he" there, who do you mean?

11             THE WITNESS:  The boss.

12             THE COURT:  The person sitting in the courtroom or

13     someone else?

14             THE WITNESS:  The person seated here in the courtroom.

15             THE COURT:  You've identified this other person Hui

16     Chen as a boss.  Did you know Hui Chen or not?

17             THE WITNESS:  No.

18             THE COURT:  Okay.  Go ahead.

19     BY MR. YAN:

20     Q.  Was Hui Chen the owner of the restaurant?

21     A.  Yes.

22     Q.  Was the gentleman sitting at the table, the second table

23     here, not owner of restaurant, correct?

24     A.  Yes.

25     Q.  Hui Chen was in the restaurant every day when you worked in

J4MTLI1                         Hidalgo - Cross

1    the restaurant Ichiro Sushi, correct?

2    A.  No.

3    Q.  Did you recall your counsel made a complaint May 19, 2015

4    on your behalf?

5    A.  I don't remember.

6         MR. YAN:  At this moment I would like to introduce a

7    complaint number 34 into the evidence to impeach response other

8    than the plaintiff credibility.

9         THE COURT:  This is a premarked exhibit?

10        MR. YAN:  It's not a premarked exhibit but that's the

11   amended complaint in the docket, and in this document plaintiff

12   counsel on behalf of the plaintiff alert that Hui Chen was in

13   the restaurant every day and managed day-to-day operations of

14   the restaurant.

15        THE COURT:  Do you know what this is, Mr. Cooper?

16        MR. COOPER:  First of all, Judge, I don't have a copy

17   of any marked or premarked or otherwise exhibits from Mr. Yan.

18   He's asking your Honor to cross-examine on the amended

19   complaint.  Mr. Hidalgo said he --

20        THE COURT:  You're asking for the amended complaint in

21   this case?

22        MR. COOPER:  Yes.

23        MR. YAN:  Yes.

24        MR. COOPER:  Mr. Hidalgo said he did not remember his

25   attorney amending the complaint, so I don't know how it would

J4MTLI1                          Hidalgo - Cross

1    be impeachment if he didn't remember for him to now

2    cross-examine on allegations in the amended complaint.  I think

3    it's improper but --

4              MR. YAN:  Your Honor, counsel's work product and also

5    submissions on behalf of the plaintiff is binding on the

6    plaintiff and plaintiff has the relief in other venue maybe

7    against his counsel for whatever the statement in the system

8    made a complaint that state the facts by this plaintiff

9    claiming that Hui Chen was in the restaurant operating the

10   restaurant every day in the day-to-day operations.

11             THE COURT:  I'll take this for what it is worth just

12   to move along.  Go ahead.

13             You can refer to the complaint.

14             MR. YAN:  Let me do the reference, it's the reference

15   to the paragraph 28, page 5, of the amended complaint, document

16   34.

17             MR. SCHWEITZER:  Your Honor, I don't think I have a

18   copy of the complaint.  I believe it's been misrepresented.

19   Defendants Hui Chen and Jianhui Wu were present in the Ichiro

20   Sushi every day.  It makes no distinction between them.

21             MR. COOPER:  What paragraph?

22             MR. YAN:  Your Honor, if counsel has to read, he has

23   to read the whole paragraph.  If I may, I did read the whole

24   paragraph into the record.

25             THE COURT:  It's in the record, I will read it.  Let's

J4MTLI1                          Hidalgo - Cross

1    move on.

2              MR. COOPER:  Which paragraph?

3              MR. YAN:  28.  Because here saying Hui Chen actively

4    participate in the day-to-day operation of Ichiro Sushi.

5              May I proceed?

6              THE COURT:  You may.

7    BY MR. YAN:

8    Q.  Sir, you had opportunity to amend your complaint, but you

9    never alleged in your amended complaint that the gentleman

10   Mr. Wang was your boss, correct?

11             MR. COOPER:  Objection, this is --

12             THE COURT:  It's a waste of time, but it's Mr. Yan's

13   clock.  You're essentially making argument between the witness

14   and what was alleged in the complaint.  If that's what you

15   would like to, I will allow it, and I will take it for what

16   it's worth.

17   A.  No.

18   Q.  Starting on October 1st, did you sign any paper?

19             MR. COOPER:  Objection.  What year?

20             MR. YAN:  October 1st, 2014.

21             THE COURT:  The question is:  Did he sign any papers?

22             MR. YAN:  Yes.

23             THE COURT:  On October 1st, 2014?

24             MR. YAN:  Yes.

25             THE COURT:  You may answer.

J4MTLI1                          Hidalgo - Cross

1              THE WITNESS:  No.

2    Q.  Did you clock in in any way starting October 1st when you

3    claim that you worked for either Ichiro Sushi restaurant or New

4    Ichiro restaurant?

5    A.  I don't understand.

6    Q.  October 1st, 2014, did you punch in when you started worked

7    for the restaurant?

8    A.  No, no.

9    Q.  Did you punch out October 1st, 2014 when you worked for the

10   restaurant?

11   A.  No.

12   Q.  You never seen -- strike that.

13              You never seen any clocking machine in the restaurant

14   for to you punch in or punch out, October 1st, 2014, correct?

15   A.  No.

16   Q.  You never see any clocking machine for you to punch in or

17   punch out October 2nd, 2014, correct?

18   A.  I don't understand.

19   Q.  Let me repeat again.  Did you see any clock machine, the

20   time machine to allow you to clock in or clock out October 2nd,

21   2014 in the restaurant?

22   A.  No.

23   Q.  You did not see any payments on October 1st, 2014, correct?

24              THE INTERPRETER:  Could you repeat that?

25   Q.  You did not receive any pay for your work on October 1st,

J4MTLI1                              Hidalgo - Cross

1    2014 and October 2nd, 2014, correct?

2    A.  I don't understand.

3    Q.  Have you ever received payments for your work on

4    October 1st, 2014 and October 2nd, 2014?

5             Let the record reflect that --

6    A.  I don't remember.

7    Q.  -- plaintiff paused for a moment of silence and is thinking

8    about an answer.

9             MR. COOPER:  Reflecting, Judge.

10            THE COURT:  I will note for the record that this is a

11   difficult exercise.  We have obviously Mr. Yan, you are fluent

12   in English, but you do have an accent that can be difficult to

13   hear.  We have acoustic challenges in the room, it's going from

14   the interpreter to the witness, from the witness to the

15   interpreter and back.  So I will note for the record that I

16   didn't see anything that was relevant to a determination of

17   credibility by the pause that you just noted, but you can note

18   it if you would like.  I'm the one making the assessments.

19            MR. YAN:  Your Honor, I defer to the Court's

20   assessment for demeanor.

21            THE COURT:  I pay careful attention.

22   BY MR. YAN:

23   Q.  Sir, how much you were paid from September 18, 2013 --

24   strike that.

25            Sir, how much you were paid from September 18, 2014 to

J4MTLI1                           Hidalgo - Cross

1    September 30, 2014?

2              THE COURT:  Sorry, until September when?

3              MR. YAN:  30, 2014.

4              THE COURT:  Thank you.

5    A.  550.

6    Q.  How did you come up with this number?

7    A.  I remember it.

8    Q.  Did you work every day from September 18, 2014 to

9    September 30, 2014?

10   A.  Yes.

11   Q.  How were you paid during that period of time, September 18,

12   2014 through September 30, 2014?

13   A.  Cash.

14   Q.  Who gave the cash?

15   A.  He did.

16             MR. COOPER:  Reflecting that the witness identified

17   the defendant in the courtroom.

18             THE COURT:  Mr. Hidalgo, when you say "he" you mean

19   the gentleman sitting in the seat behind your attorney,

20   Mr. Cooper?

21             THE WITNESS:  Yes.

22             THE COURT:  So the record will reflect that the

23   witness is indicating the defendant, Mr. Wang.

24   Q.  Before you received the cash payment, were you required to

25   sign any piece of paper to evidence your receipt of these cash

J4MTLI1                          Hidalgo - Cross

1   $550 for the period September 18, 2014 until September 30,

2   2014?

3   A.  Yes.

4   Q.  What kind of paper you signed?

5   A.  It was in a book.

6   Q.  What kind of book?

7   A.  A notebook with lines in it.

8   Q.  On the book -- how many names were on the book when you

9   signed your name?

10  A.  Maybe 15 to 17 names.

11  Q.  On what day you signed your name on to the book for that

12  period of time?

13  A.  I don't understand.

14  Q.  On what day you signed your name to receive cash payments?

15  A.  As I was being given the money.

16  Q.  On what day?

17  A.  The days changed.  It wasn't always the same.

18  Q.  When you received the money for the period September 18,

19  2014 to September 30, 2014, when did you sign your name to the

20  book?

21  A.  I don't remember.

22  Q.  When you mentioned -- you just testified there were 15 to

23  17 names on the book.  Please tell us some of these names on

24  the book.

25  A.  I don't know it.

J4MTLI1                          Hidalgo - Cross

1   Q.  And who were your colleagues at the time that worked with

2   you between September 18, 2014 to September 30, 2014?

3           MR. COOPER:  Objection, I didn't understand the

4   question.

5           THE COURT:  Could you please repeat it, Mr. Yan?

6   Q.  Who were your co-workers that worked with you between

7   September 18, 2014 to September 30, 2014?

8   A.  One of them is no longer there at Sushi.  He helped me cook

9   there, but he's not working there anymore.

10  Q.  Can you tell us what's his name?

11  A.  No, I can't.

12  Q.  And who was this person?

13  A.  They're compatriots of theirs, so same country as them.

14  That's why I don't know the name.

15  Q.  And did you work at the sushi bar when you worked in the

16  Ichiro Sushi?

17  A.  I worked in the kitchen.  I washed dishes, things like

18  that, the fryer, cooking, making sauce, all of that.  I cut

19  meats.

20  Q.  Who was your co-worker in the kitchen between the time

21  period between September 18, 2014, through September 30, 2014?

22  A.  One of the guys that left the sushi bar.

23  Q.  Sir, again, who was your co-worker in the kitchen from

24  September 18, 2014 to September 30, 2014?

25  A.  I don't know that person's name.

J4MTLI1                          Hidalgo - Cross

1    Q.  Was there any person who worked with you during that period

2    of time September 18, 2014 to September 30, 2014, in the

3    kitchen in the Ichiro Sushi or New Ichiro Sushi?

4    A.  There were two of us there, that's it.

5    Q.  What did they do?

6    A.  There was a person that worked in the sushi bar.  He would

7    leave the sushi bar and come into the kitchen.  He and I were

8    the only two in the kitchen.

9    Q.  You did not have anyone that worked in the kitchen with you

10   from September 18, 2014 until September 30, 2014, correct?

11             MR. COOPER:  Objection, asked and answered.

12             THE COURT:  Sustained.

13   Q.  From May 2010 to October 2nd, 2014, did you ever leave the

14   restaurant and did not work there?

15   A.  I left there October 2nd, 2014, that's when I left.

16   Q.  Did you work at any other places from May 2010 to October

17   2nd, 2014?

18   A.  No.

19   Q.  When you started working at the restaurant Ichiro Sushi on

20   May 2010, who told you what hours to work at the restaurant.

21   A.  The wife of the boss that was always there.

22   Q.  What's her name?

23   A.  I don't know her name.

24   Q.  Was your hour ever changed since you started working on

25   May 2010 in the restaurant?

J4MTLI1                          Hidalgo - Cross

1    A.  No, it was the same hours.

2    Q.  Was the gentleman sitting at the table here, Mr. Wang, ever

3    change your hours when you worked in the restaurant?

4    A.  No, no, the people changed, but the hours never changed.

5    Q.  When you started working at the restaurant on May 2010, who

6    set up the rate to pay you?

7    A.  I don't understand.

8    Q.  When you start to work in the Ichiro restaurant on

9    May 2010, who set up the rate of your payment?

10   A.  The lady, the boss and his wife.

11              THE COURT:  Mr. Hidalgo, when you say "the boss and

12   his wife," who do you mean by the boss?

13              THE WITNESS:  The boss, the boss.

14              THE COURT:  Was that someone that you saw?

15              THE WITNESS:  Yes, the wife.

16              THE COURT:  Did you see the boss as well as the boss's

17   wife.

18              THE WITNESS:  Yes, they would pay me.

19              THE COURT:  And "the boss," are you referring to

20   anyone in the courtroom when you say "the boss" or someone who

21   is not here?

22              THE WITNESS:  Well, no, he was the boss also.

23              THE COURT:  Who is "he?"

24              THE WITNESS:  Well, there was a boss and then 2013 he

25   was the boss, too.

J4MTLI1                          Hidalgo - Cross

1           THE COURT:  When you say "he," who do you mean?

2           THE WITNESS:  The boss.

3    BY MR. YAN:

4    Q.  Sir, you saw this gentleman sitting at the second table

5    here sometime in 2010, correct?

6    A.  He was not there in 2010, not yet, no.

7    Q.  So if he was not there, who was the boss in 2010?

8    A.  The lady.

9           THE COURT:  Just for clarity, because I don't actually

10   understand what you're saying, you say the boss and the boss's

11   wife.  Is the boss's wife in the courtroom?

12          THE WITNESS:  No.

13          THE COURT:  Is the boss in the courtroom?

14          THE WITNESS:  Today, yes.

15          THE COURT:  When you say "the boss" you're referring

16   to Mr. Wang who is sitting behind --

17          THE WITNESS:  Yes, the boss.

18          THE COURT:  When you say patron or boss, you mean

19   Mr. Wang who is sitting in the courtroom, is that correct?

20          THE WITNESS:  Yes.

21          THE COURT:  Okay.  So was he -- was the boss, the

22   patron, Mr. Wang, was he there in 2010 when you started?

23          THE WITNESS:  No.

24          THE COURT:  Okay.  So who at that time told you what

25   your salary would be, assigned your hours, et cetera?

J4MTLI1                          Hidalgo - Cross

1          THE WITNESS:  I came from an agency and they told me

2     how much I was going to be getting paid.

3     BY MR. YAN:

4     Q.  Was it correct your agency up your rate of the payment?

5     A.  Yes, they gave me a receipt there.

6     Q.  Who was the agency?

7     A.  Somewhere in Chinatown.

8     Q.  During your entire period of time you worked in restaurant,

9     your agency set up your rate of payment, correct?

10    A.  I don't understand.

11    Q.  In May 2010 to 2014, did your agency ever direct to you

12    work anywhere else?

13    A.  No.

14         MR. YAN:  Your Honor, at this moment, I'm going to

15    offer the Court to admit the Trial Exhibit Number 13 into the

16    evidence, that's plaintiff Robert Hidalgo's affidavit made on

17    March 11, 2015, document number 90, and also I would like to

18    present this piece --

19         THE COURT:  So you're moving --

20         MR. YAN:  Your Honor, I can mark Plaintiff Number 13

21    as the Plaintiff Trial Number 13 for now.

22         THE COURT:  Plaintiff's Trial Exhibit Number 13.

23         MR. COOPER:  The Court instructed us to premark

24    exhibits.  We have a copy of the affidavit, we don't have a

25    copy of anything marked, but I have no objection to the

J4MTLI1                         Hidalgo - Cross

1   affidavit.

2              THE COURT:  What is the affidavit?

3              MR. COOPER:  It's affidavit of Roberto Hidalgo dated

4   March 11, 2015.

5              THE COURT:  Okay.  So you're willing to mark it as

6   Plaintiff's Exhibit 13?

7              MR. YAN:  Yes.

8              MR. COOPER:  Plaintiff's 13?

9              THE COURT:  He said plaintiff's.

10             Mr. Yan, if you're moving it, mark it as one of your

11  trial exhibits.

12             MR. YAN:  May I approach Mr. Robert Hidalgo with the

13  exhibit?

14             THE COURT:  We need clarity first on what we're

15  referring to.  It is the March 11, 2015 affidavit and you'll

16  mark it as Defendant --

17             MR. YAN:  Trial Exhibit 13.

18             THE COURT:  Defendant Exhibit 13?  I thought

19  defendants were using letters.

20             MR. YAN:  Use the letter.

21             MR. COOPER:  He used numbers, Judge.

22             THE COURT:  So your last exhibit is 12, so this is

23  Defendant --

24             MR. YAN:  Number 13, so I can keep all the numbering

25  with the trial exhibits, because we're going to introduce all

J4MTLI1                        Hidalgo - Cross

1    the rest of the trial exhibits into the evidence of the

2    defendants.  We have 15 trial exhibits.

3              THE COURT:  And are they marked as Defendant Ichiro

4    Sushi Exhibit et cetera, et cetera, et cetera?

5              MR. YAN:  Yes.

6              MR. COOPER:  Nothing is marked, Judge.

7              THE COURT:  Well, you will mark it now.  You are

8    marking it as Defendant's New Ichiro Sushi Exhibit, fill in the

9    blank.

10             MR. YAN:  13.

11             THE COURT:  Okay.  Okay.  We'll take our ten-minute

12   mid-morning break right here.

13             (Recess taken)

14             THE COURT:  Mr. Hidalgo may come back to the witness

15   stand, please.

16             You may proceed, gentlemen.

17             MR. YAN:  May I approach?

18             THE COURT:  Yes.  Handing the witness what we

19   discussed as --

20             MR. YAN:  Plaintiff's 13.

21             MR. COOPER:  Defendant.

22             THE COURT:  Defendant's Ichiro Sushi Exhibit 13.

23             MR. YAN:  Yes.

24   BY MR. YAN:

25   Q.  Sir, please take a look at the piece of document and tell

J4MTLI1                        Hidalgo - Cross

1    us if you are familiar with the piece of document.

2    A.  Yes.

3    Q.  And at the signature page, is that the signature signed by

4    you?

5    A.  Yes.

6    Q.  And there's three letters.  Did you receive these three

7    letters?

8              THE INTERPRETER:  I didn't understand.

9    Q.  On the back of this document there are three letters

10   attached to your declaration.

11   A.  Yes.

12   Q.  You've received these letters?

13   A.  Yes.

14   Q.  And on the second letter -- the third letter, the letter

15   indicate Hui Chen was owner, correct?

16   A.  Yes.

17             MR. COOPER:  Which letter are you referring to?

18             MR. YAN:  On the declaration, Exhibit Number 13.

19             MR. COOPER:  Does the Court want a copy?

20             THE COURT:  I think we have it.

21             MR. YAN:  I have two binders to give to you.

22             MR. COOPER:  Could you identify it by the date when

23   you refer to a letter?

24             THE COURT:  Which letter are you referring to?

25             MR. YAN:  The letter on page 3 of 4 and the letter on

J4MTLI1                          Hidalgo - Cross

1    page 4 of 4.

2              THE COURT:  What's the date?

3              MR. YAN:  The date is August 31, 2014 and May 5th,

4    2014.

5    Q.  Hui Chen was owner, correct?

6    A.  Yes.

7    Q.  And back under the letter dated March 23, 2011, page 2 of

8    4, also someone signed them as Hui Chen and owner, correct?

9    A.  Yes.

10   Q.  You never have any documents from gentleman sitting at the

11   second table here indicating he was the owner, correct?

12   A.  Well, he would give me these letters himself.

13   Q.  Listen, did you have any documents --

14             THE COURT:  Just go ahead.

15             THE WITNESS:  He gave me this, the letter dated May 5,

16   2014.

17             THE COURT:  You mean Mr. Wang, who is sited here in

18   the courtroom, he gave you these letters that are signed by

19   someone named Hui Chen, is that what you mean?

20             THE WITNESS:  Yes.

21             THE COURT:  Go ahead, Mr. Yan.

22   BY MR. YAN:

23   Q.  The letter, page 204 dated March 23, 2011, did gentleman

24   sitting at the table give you this letter?

25   A.  I don't remember that.

J4MTLI1                         Hidalgo - Cross

1   Q.  Did you have any documents from the gentleman sitting at

2   the second table in the courtroom here indicating he was owner

3   of Ichiro Sushi?

4   A.  No.

5   Q.  Why did you leave on October 2nd, 2014 when you ever worked

6   on the restaurant October 2nd, 2014?

7   A.  I don't understand.

8           THE COURT:  Nor do I.

9   Q.  Let me try again.  Why did you leave after October 2nd,

10  2014 if you ever worked in the restaurant from May 2010 to

11  October 2nd, 2014?

12          MR. COOPER:  I think he's asking why did you quit or

13  get fired.

14          THE COURT:  Are you asking why did he leave when he

15  did leave?

16          MR. YAN:  Yes.

17          THE COURT:  And you don't want to accept the premise

18  that he ever worked there, fine.  We still need to understand

19  what you're saying.

20          MR. YAN:  Maybe I shouldn't have used "quit."

21          THE COURT:  Shouldn't have what?

22          MR. YAN:  Let me rephrase it.

23          THE COURT:  Okay.

24  BY MR. YAN:

25  Q.  Why did you quit to work in a restaurant after October 2nd,

J4MTLI1                              Hidalgo - Cross

1    2014?

2    A.   Because he kept lying, saying he was going to hire someone

3    else to work in the kitchen, but that never happened.  And he

4    kept saying I'm going to give you another hundred dollars, I

5    will pay you tomorrow, but he never did.

6    Q.   So you quit or you were terminated after October 2nd, 2014.

7    A.   Well, he didn't pay me everything he was supposed to,

8    that's why I left.

9    Q.   What do you think you were supposed to be paid for

10   October 1st, 2014 and October 2nd, 2014?

11   A.   I don't understand.

12   Q.   What do you think you were supposed to be paid for your job

13   to work in restaurant October 1st, 2014 and October 2nd, 2014?

14   A.   I don't understand.

15           THE COURT:  Mr. Yan, for your awareness, you have

16   about ten minutes left of what you anticipated for your time

17   for this witness.  If you want to go over that, it's going to

18   come out of other witnesses, but so you are aware.  Thank you.

19   BY MR. YAN:

20   Q.   Have you ever made a complaint during your job from

21   May 2010 to the end of your employment with either restaurant

22   to anyone at the restaurant?

23           MR. COOPER:  Complaint about what, Judge?

24           THE COURT:  You can make an objection.

25           MR. COOPER:  Objection.

1          THE COURT:  Could you help clarify Mr. Yan?

2          MR. YAN:  Yes, your Honor.

3    BY MR. YAN:

4    Q.  Sir, have you made any complaint about your underpayment of

5    your employment during your employment in a restaurant starting

6    from May 2010 and the time you quit from the restaurant?

7    A.  I don't understand.

8          THE COURT:  Did you ever complain to anyone in the

9    restaurant that you were being, in your view, underpaid?

10         THE WITNESS:  I don't understand.

11         MR. YAN:  Your Honor, I have no further questions at

12   this time.

13         THE COURT:  Okay.

14         MR. XUE:  I just have one question.

15         THE COURT:  Go ahead.

16   CROSS-EXAMINATION

17   BY MR. XUE:

18   Q.  Good morning, Mr. Hidalgo, my name is Benjamin Xue.  I am

19   not an attorney in your case, but I have one question to ask

20   you.  You saw the lady who testified before you today, right?

21   A.  No.

22   Q.  Do you know her?

23         THE COURT:  Just a second.

24         Mr. Hidalgo, you have been in the courtroom since we

25   started this morning, correct?

1          THE WITNESS:  Yes.

2          THE COURT:  And there was a woman who testified as a

3   witness and sat in that chair before you did.  Were you present

4   in the courtroom when that occurred?

5          THE WITNESS:  No.

6          THE COURT:  You were not present in the courtroom when

7   she testified?

8          THE WITNESS:  Oh, yes.

9          THE COURT:  Okay.

10  BY MR. XUE:

11  Q.  Do you know her?

12  A.  No.

13         MR. XUE:  No more questions.

14         THE COURT:  Thank you.

15         MR. YAN:  Your Honor, I forgot to request Court to

16  make motion to receive the Exhibit 13 of the defendant's to the

17  evidence.

18         MR. COOPER:  No objection.

19         THE COURT:  Thank you, so what has been marked now as

20  defendant Ichiro Sushi Exhibit 13, which is the March 11, 2015

21  declaration of Mr. Hidalgo and accompanying exhibits, without

22  objection is admitted.

23         (Defendant's Exhibit Ichiro Sushi 13 received in

24  evidence)

25         THE COURT:  Thank you.  Go ahead Mr. Cooper.

J4MTLI1                         Hidalgo – Redirect

1    REDIRECT EXAMINATION

2    BY MR. COOPER:

3    Q.  Mr. Hidalgo, relax.  Continue doing your best to answer the

4    questions that anyone asks of you.

5            Just a few questions to clarify your testimony.

6    Mr. Yan asked you if you worked for Ichiro Sushi on a part-time

7    basis.  Did you hear that?

8            MR. YAN:  Your Honor, objection, whatever testimony

9    that's --

10           THE COURT:  Overruled.

11   BY MR. COOPER:

12   Q.  Did you hear him ask that question?

13   A.  Yes.

14   Q.  What did you mean by that?

15   A.  But I didn't understand.

16   Q.  What do you understand your hours at Ichiro Sushi to be?

17           MR. YAN:  Objection, your Honor, whatever the question

18   and answer is in the record.

19           THE COURT:  Well, I'm trying to get to the truth, so

20   if he didn't understand the question, then redirect is

21   appropriate for him to clarify.

22           MR. YAN:  Your Honor, that's Mr. Peter --

23           THE COURT:  It's Mr. Cooper.

24           MR. YAN:  Mr. Cooper can reserve whatever argument in

25   closings because there are plaintiff --

J4MTLI1                          Hidalgo - Redirect

1            THE COURT:  Overruled.  It's appropriate for redirect.

2       I know you felt like you had your Perry Mason moment and got a

3       gotcha, but I want to understand the truth.  You will see this

4       for all parties involved.  I ask clarifying questions if I

5       think we're having difficulties.  We're all struggling a little

6       bit with communication and language, so it is appropriate for

7       redirect to allow this to have an attorney direct a witness to

8       try to clarify.  If you want to come back and say something

9       else, you can to that, but overruled.  It's appropriate for

10      redirect.

11           If I'm understanding your objection, your objection is

12      that he can argue that at closing.

13           MR. YAN:  Right, because the deponent -- I mean the

14      plaintiff did not testify he did not understand my question

15      under oath.  He was certain.  He also saying he didn't

16      understand the Court's question.  However, very clear questions

17      he answered very straightforward.

18           THE COURT:  But that doesn't mean that he didn't

19      understand, and it's appropriate for redirect.  Overruled.

20           MR. YAN:  Your Honor, note my objection.

21           THE COURT:  You objected.  It's noted.  I let you make

22      it three times despite overruling it.  If you would like to

23      make it a fourth, you may.

24           Go ahead.

25      BY MR. COOPER:

J4MTLI1                        Hidalgo - Redirect

1    Q.  What did you understand your hours to be in Ichiro Sushi

2    when you worked there?

3    A.  I didn't understand that it was part time when I said that

4    it was my salary that I understood.

5    Q.  What were your hours at Ichiro Sushi?

6    A.  From ten in the morning until ten in the evening.

7    Q.  How many days a week did you work?

8    A.  Six days.

9    Q.  And that was your schedule from the -- was that your

10   schedule the entire time you worked at Ichiro Sushi?

11   A.  Yes, yes.

12   Q.  There was testimony during cross when Mr. Yan was asking

13   you questions about the boss and the judge also asked you a

14   couple of questions about that.  So you talked about someone

15   who signed the letter, the letters that you provided to the

16   Court.  Do you know who that person was?

17   A.  This boss would take them to be signed.

18   Q.  Don't say this boss, because nobody knows what you're

19   talking about.  I'm asking you who was the person who signed

20   the letters, if you know.

21        THE COURT:  Mr. Cooper, you're not testifying, in

22   fact, you should be -- you're restricted to non-leading

23   questions and you're certainly not going to direct the witness

24   how to answer.  Rephrase.

25   Q.  If you can, describe who was in charge of you during the

J4MTLI1                      Hidalgo - Redirect

1    time period you worked at Ichiro Sushi.  Who were the people

2    that were controlling your hours and pay?

3    A.  He was, the boss.

4    Q.  Okay.  And when did he start working there, if you

5    remember?

6             When you say "he," the record should reflect he was

7    pointing to the individual at the second table.

8    A.  In 2013.

9             MR. YAN:  Objection, your Honor, question should be

10   struck from the record because it's out of cross.

11            THE COURT:  Overruled.

12   Q.  Before that --

13            THE COURT:  The gentleman sitting at the table, his

14   name is Mr. Wang, so if you want to refer to him, if you're

15   talking about something, refer to him as Mr. Wang.  If you're

16   talking about someone else, describe him or use their name.

17   When you say "he," I can't understand who you're talking about.

18   Thank you.

19            THE WITNESS:  Okay, thank you.

20   BY MR. COOPER:

21   Q.  So the gentleman that you just indicated you testified

22   started in 2013, before that did you work at the restaurant?

23   A.  Yes.

24   Q.  And was there a different person in charge of the

25   restaurant?

J4MTLI1                          Hidalgo - Redirect

1   A.  No.

2   Q.  Was there anyone in charge of the restaurant?

3           MR. YAN:  Your Honor that's a question -- answer

4   already given.  If Mr. Cooper is not satisfied with the

5   answer --

6           THE COURT:  Is your objection asked and answered?

7           MR. YAN:  Yes.

8           MR. COOPER:  I'll move on, Judge.

9           THE COURT:  Sustained.

10  BY MR. COOPER:

11  Q.  Before 2013, do you remember who was your boss?

12  A.  Yes.

13  Q.  Who was that?

14  A.  Him.  Him.

15  Q.  You testified that --

16          THE COURT:  And by "him," you mean Mr. Wang?  Is that

17  who you mean or someone else?

18          THE WITNESS:  Yes, Wang.

19  Q.  And you testified that you did not use a clock-in machine.

20  Do you remember saying that?

21          MR. YAN:  Objection, your Honor, mischaracterization

22  of the cross.

23          THE COURT:  Overruled.

24  A.  No, I did not.

25  Q.  Did you see a machine for other people to use, anyone else

J4MTLI1                          Hidalgo - Redirect

1    in the restaurant?

2    A.   No.

3    Q.   You testified that you were paid by Mr. Wang?

4    A.   He paid me.

5    Q.   And you testified that he came in 2013, right?

6    A.   Yes.

7    Q.   And after he came, he started paying you, is that your

8    testimony?

9    A.   Yes.

10   Q.   And before he came, who paid you, before Mr. Wang?

11   A.   The female boss.

12   Q.   Did the female boss leave when Mr. Wang came?

13   A.   No, they were both there.

14   Q.   You testified that you started at 10 o'clock in the

15   morning, is that right?

16   A.   Yes.

17   Q.   When you came in, did you have a key to the restaurant or

18   was it already unlocked?

19   A.   No, he opened it.

20   Q.   When you say --

21          MR. YAN:   That's our side of the cross, it was never

22   solicited this kind of testimony in the direct, so objection.

23          THE COURT:   Overruled.

24          MR. COOPER:   It will be brief, Judge.

25   Q.   Who opened the restaurant for you?

J4MTLI1                              Hidalgo - Redirect

1    A.  The boss.

2    Q.  And nobody knows what you mean by that, so you have to

3    identify or give the name or something.

4    A.  Him.

5    Q.  Are you talking about the gentleman seated at the second

6    table?

7    A.  Yes.  I forget his name, I'm sorry.

8    Q.  When you worked there, did you know his name?

9    A.  No.

10   Q.  Did you know him by a nickname?

11   A.  No, neither.

12   Q.  You said that you left because you were promised an extra

13   hundred dollars a week and you did not receive it?

14   A.  No, he owed me that in my salary.  That's why I left, he

15   never wanted to give it to me.

16   Q.  So your salary was cut by a hundred dollars one week?

17   A.  Yes.

18   Q.  And who is "he?"

19   A.  The boss.

20   Q.  Are you referring to Mr. Wang, the individual seated at the

21   table today?

22   A.  Yes, Wang.

23   Q.  And you testified that your salary was $550?

24           MR. YAN:  Objection, your Honor, that's outside of the

25   scope of the cross.

1          MR. COOPER:  I believe it was directly within the

2     cross, Judge.  Mr. Yan asked the witness what his pay was in

3     September 2014, and the witness responded $550, and I just want

4     to find out if he meant -- what he meant by that.

5          THE COURT:  In a non-leading question.

6          MR. YAN:  Your Honor, my question was during the

7     period of time how much were you paid, didn't ask for the rate.

8     Mr. Cooper's question was about --

9          THE COURT:  Mr. Yan, that's not how scope works.  He

10    doesn't have to use the exact same words you do.  He can

11    respond and elicit information based on answers that you got to

12    your question.  That's how scope of direct and cross works.

13    Overruled.

14    BY MR. COOPER:

15    Q.  So you testified that in 2014, September, Mr. Yan gave you

16    a period of time in September that your pay was $550.  Do you

17    remember that testimony?

18    A.  Yes, 550.

19    Q.  How frequently were you paid?

20          MR. YAN:  Objection, your Honor.

21          THE COURT:  Overruled.

22    Q.  How often were you paid?

23    A.  For my work, right?

24    Q.  For your work.  You said $550, I'm trying to figure out

25    often that $550 was given to you.

J4MTLI1                          Hidalgo - Cross

1              MR. YAN:  Objection to the leading questions.

2              THE COURT:  Sustained.  Mr. Cooper, I know it's a

3    struggle, but it's also the rule.

4              MR. COOPER:  Thank you, Judge.  I'll rephrase.

5    Q.  How often were you paid?

6              MR. YAN:  Objection, question answered.

7              THE COURT:  Overruled.

8    A.  I was paid for the work I did for cooking.

9    Q.  How frequently?

10   A.  I don't understand that.

11             THE COURT:  Were you paid every day?

12             THE WITNESS:  No, no, every six days.

13             MR. COOPER:  Thank you, Judge, no further questions.

14             THE COURT:  Mr. Yan?

15             MR. YAN:  Yes, Judge.

16   RECROSS EXAMINATION

17   BY MR. YAN:

18   Q.  Mr. Hidalgo, let me direct your attention back to the

19   documents I gave to you, the Plaintiff Exhibit -- Defendant

20   Trial Exhibit Number 13.  Did you request the owner to provide

21   a letter indicating you worked part time when you were in the

22   Ichiro Sushi restaurant to submit this letter to the

23   government?

24   A.  Yes, because I was not paid the full salary.

25   Q.  You request owner to represent to the government that you

J4MTLI1                        Hidalgo - Cross

1   work in the restaurant part time, correct?

2           MR. COOPER:  Objection.

3           THE COURT:  Overruled.

4   A.  Part time because I was not paid the hours, the extra

5   hours.

6   Q.  Let me try again.  You request owner of Ichiro Sushi

7   restaurant to represent to the government that for whatever

8   terms of your benefits you worked in Ichiro Sushi restaurant on

9   a part-time basis, correct?

10  A.  Yes.

11  Q.  Did you submit these letters to the government agencies for

12  your benefits?

13  A.  Yes.

14  Q.  It was the first time starting from January 2019 you claim

15  that Mr. Wang was your boss, correct?

16  A.  Yes.

17  Q.  You never claim Mr. Wang was your boss since you started

18  this proceeding in May 2015, correct?

19  A.  Yes.

20  Q.  You just testified in my cross saying that your hours were

21  never changed since May 2010 when the wife of the owner set

22  your hours, correct?

23  A.  Yes.

24  Q.  Why did you say that Mr. Wang all the sudden control your

25  hours in the redirect?

J4MTLI1                         Hidalgo - Cross

```
 1  A.  When he arrived, he changed all of the staff and he started
 2  to run the restaurant.  He changed everything.
 3  Q.  Your hours were never changed, correct?
 4  A.  The same.
 5  Q.  When did Mr. Wang arrive at the restaurant, if you can
 6  recall?
 7  A.  I couldn't say.  I know it was sometime after 2013.
 8          THE COURT:  Anything further, Mr. Wang?
 9  Q.  Why did you say that Mr. Wang was your boss before 2013 you
10  just testified during the redirect?
11  A.  Because he was paying me my salary, he was managing me
12  also.
13  Q.  Before 2013 he was paying you?
14  A.  Yes, yes, he was already paying.
15  Q.  But you could not remember he was in the restaurant before
16  2013, correct?
17  A.  He was already there in 2013.  He was already paying.
18  Q.  Before 2013, my question was to you, again, why did you
19  testify -- respond to your counsel's clear question that before
20  2013 who was your boss, you just testified Mr. Wang was your
21  boss.
22  A.  He was my boss.
23          THE COURT:  Was he your boss in 2012?
24          THE WITNESS:  No, 2013.
25          THE COURT:  Did Mr. Wang pay you in 2012?
```

J4MTLI1                          Wu - Direct

1              THE WITNESS:  I don't remember that.

2              THE COURT:  Well, if he wasn't your boss in -- was he

3      at the restaurant in 2012?

4              THE WITNESS:  I think he was there before that.

5              THE COURT:  Was he there in 2011?

6              THE WITNESS:  I don't remember.

7              THE COURT:  How about 2010?

8              THE WITNESS:  No, he was not.

9              THE COURT:  So do you have a memory of him arriving at

10     the restaurant?

11             THE WITNESS:  Yes.

12             THE COURT:  And what's your best estimate of when that

13     was?

14             THE WITNESS:  2013.

15             MR. YAN:  I have no further questions.

16             THE COURT:  All right.  You may step down.

17             Why don't we get the next witness called and get the

18     declaration in and then we'll break for lunch.

19             MR. SCHWEITZER:  Calling Jainhui Wu.

20      JAINHUI WU,

21          called as a witness by the Plaintiff,

22          having been duly sworn, testified as follows:

23     DIRECT EXAMINATION

24     BY MR. SCHWEITZER:

25             THE COURT:  I ask the interpreter's name, please.

J4MTLI1                              Wu - Direct

1              THE INTERPRETER:  Arthur Kwok, K-W-O-K, native

2    language Mandarin.

3              THE COURT:  And how long have you been translating

4    between English and Mandarin?

5              THE INTERPRETER:  Over 20 years.

6              THE COURT:  Have you previously been qualified as an

7    interpreter in either state or federal court?

8              THE INTERPRETER:  I have, Judge.

9              THE COURT:  In federal court as well?

10             THE INTERPRETER:  In state, OCA.

11             THE COURT:  Okay, what's OCA?

12             THE INTERPRETER:  Office of Court Administration.

13             THE COURT:  Thank you.

14             Counsel, any objection to Mr. Kwok's qualification as

15   a Mandarin to English interpreter?

16             MR. YAN:  No, your Honor.

17             MR. XUE:  No.

18             THE COURT:  We'll administer the oath to Mr. Kwok.

19             (Interpreter sworn)

20             THE COURT:  Thank you.

21             Mr. Schweitzer.

22             MR. SCHWEITZER:  Your Honor, may I approach?

23             THE COURT:  You may.  What are you showing?

24             MR. COOPER:  The declaration.

25             THE COURT:  Which has been marked as?

J4MTLI1                           Wu - Direct

```
 1              MR. SCHWEITZER:  It's affidavit of Jainhui Wu, doesn't
 2      have exhibit number, and should probably follow along with
 3      Exhibit 18.
 4              THE COURT:  So Plaintiff Exhibit 8, is that right?
 5              MR. COOPER:  18.
 6              THE COURT:  18.  Okay, Plaintiff Exhibit 18.  Go
 7      ahead.
 8      BY MR. SCHWEITZER:
 9      Q.  Sir, do you recognize the document that's been placed
10      before you that's been identified as Plaintiff's Exhibit 18?
11      A.  Yes, yes, I recognize it.
12      Q.  What is that document?
13              THE COURT:  Is that your signature on the last page?
14              THE WITNESS:  Yes.
15              THE COURT:  You understand that is what is being
16      submitted as your testimony in court today?
17              THE WITNESS:  Yes, I understand.
18              THE COURT:  And when did you sign this?
19              THE WITNESS:  February 4, 2019.
20              THE COURT:  Have you had an opportunity recently to
21      review the declaration?
22              THE WITNESS:  Yes.
23              THE COURT:  And the declaration is in English.  Did
24      you review a Mandarin translation or work with an interpreter
25      in preparing it?
```

J4MTLI1                         Wu - Direct

1              THE WITNESS:  It was interpreter translated for me.

2              THE COURT:  Okay.  Are there any errors or mistakes in

3    the declaration that you want to point out to me before I ask

4    you to confirm its accuracy?

5              THE WITNESS:  I don't understand which portion you are

6    talking about.

7              THE COURT:  Are there any errors anywhere in the

8    declaration or is it accurate?

9              THE WITNESS:  Yes, the entire document is accurate.

10             THE COURT:  Okay.  Then do you swear under the penalty

11   of perjury that the information contained in the document is

12   accurate?

13             THE WITNESS:  It's all true.

14             THE COURT:  Okay.  So you're moving Plaintiff's

15   Exhibit -- remind me the number.

16             MR. SCHWEITZER:  18, your Honor.

17             THE COURT:  Any exhibits along with it?

18             MR. SCHWEITZER:  That exhibit refers to Exhibit 1.

19             THE COURT:  So Plaintiff's Exhibit 1.  Anything else?

20             MR. SCHWEITZER:  At this time, no, your Honor.

21             THE COURT:  So counsel, defense counsel, any objection

22   to the declaration, which is coming in as Plaintiff's Exhibit

23   18?  Any objection to any of the testimony?

24             MR. XUE:  Exhibit 1 is what?

25             MR. SCHWEITZER:  His employee file and includes

J4MTLI1                         Wu - Direct

1    timecards, tip records.  I gave you a binder of exhibits.  It's

2    there.

3              MR. YAN:  I don't have it either.

4              We do not have an objection to Plaintiff Exhibit

5    Number 1.

6              THE COURT:  And no objection to the testimony.

7              MR. YAN:  No objection.

8              THE COURT:  All right.  Plaintiff's Exhibit 18 is

9    admitted as the direct testimony of Mr. Wu along with

10   Plaintiff's Exhibit 1.

11             (Plaintiff's Exhibit 1 and 18 received in evidence)

12             THE COURT:  We'll break for lunch and pick up with the

13   cross-examination in one hour, so please be ready to go at

14   1:05.  Thank you.

15             (Luncheon recess taken)

16             (Continued on next page)

17

18

19

20

21

22

23

24

25

J4MTLI1                          Wu - Direct

1                        AFTERNOON SESSION

2                          (1:05 p.m.)

3              THE COURT:  The witness, Mr. Wu, may return to the

4      witness stand.

5              Counsel, do you have an extra copy of Mr. Wu's

6      declaration?

7              MR. SCHWEITZER:  I gave my copy to him.

8              THE COURT:  It's fine.

9              Mr. Xue.

10             MR. XUE:  Thank you, your Honor.

11             THE WITNESS:  Your Honor, I just remembered there was

12     something that I remembered that was in error about my pay

13     rate.

14             THE COURT:  Okay.  Go ahead.

15             THE WITNESS:  So my monthly rate is 800 rather than

16     the other.

17             THE COURT:  What paragraph am I looking at?

18             THE WITNESS:  Page 4.  The 10th line from the top of

19     page 4, paragraph 18.

20             THE COURT:  So it currently says from on or about

21     July 13 to on or about 2013 I was paid $800 per work week.

22     You're saying that is incorrect?

23             THE WITNESS:  Correct, it's per month.

24             THE COURT:  Did you find that error on your own or did

25     counsel point it out to you?

J4MTLI2                        Wu - Cross

1           THE WITNESS:  My attorney pointed it out to me,

2     because I told him originally I was paid 800 per month.

3           THE COURT:  Mr. Xue, you're welcome to examine

4     attorney discussions, since it sounds like there was a

5     conversation while he was on cross.

6     CROSS-EXAMINATION

7     BY MR. XUE:

8     Q.  Mr. Wu, when did you have this conversation with your

9     attorney?

10    A.  February 4, 2019.

11    Q.  Did you talk to your attorney after we took a break?

12    A.  You mean just now?

13    Q.  During the break.

14    A.  No, this say that it was 800 per month.

15    Q.  So you had a conversation with your attorney during the

16    break, right?

17           MR. COOPER:  Objection.

18           THE COURT:  Overruled.

19    A.  Did say that it was 800 per month rather than 800 per week.

20    Q.  What else did you talk to your attorney about during the

21    break?

22    A.  Nothing.

23    Q.  Have you ever seen Mr. Aaron Schweitzer before today?

24    A.  Yes, we met.

25    Q.  On February 4, 2019, when you signed this affidavit, where

J4MTLI2                              Wu - Cross

1   were you?

2   A.  I was at the attorney's office.

3   Q.  Did anyone translate this affidavit to you?

4   A.  Yes.

5   Q.  So why in that time you did not point out your pay was

6   incorrect as set forth on paragraph 18?

7   A.  I probably didn't catch it or didn't hear it clearly.

8   Q.  What's your highest level of education?

9   A.  Junior high school.

10  Q.  In China?

11  A.  Yes.

12  Q.  Mr. Wu, do you know the lady who testified before

13  Mr. Hidalgo, the first witness who testified today?

14          I will rephrase it, your Honor, I know this

15  translation.  I will rephrase my question.

16          THE COURT:  Could you pull into the microphone?

17          MR. XUE:  I withdraw my question and I will rephrase

18  my question.

19  Q.  You saw there was a witness who testified, the first

20  witness who testified today was a female witness, right?

21  A.  Yes.

22  Q.  I will repeat my question.  You saw a female witness who

23  testified as to first witness this morning, right?

24  A.  Yes.

25  Q.  Do you know her?

J4MTLI2                          Wu - Cross

```
 1    A.  I have seen her on several occasions.

 2    Q.  What do you mean several occasions?  How many occasions?

 3    A.  Exactly how many times, I don't remember exactly, but I

 4    have seen her a few times.

 5    Q.  Less than five times or more than five times?

 6    A.  Should be more than five times.

 7    Q.  And did you have any interaction with her in those few

 8    times you saw her?

 9    A.  No.

10    Q.  Do you know her name?

11    A.  I don't.

12    Q.  So how come you put it in your affidavit, paragraph six?

13              MR. XUE:  Your Honor, I will read it.  Withdrawn.

14    Q.  Did you claim she's your boss?

15    A.  I think she is or was.

16    Q.  And what was the basis of your belief she was your boss?

17    A.  Well, because I have seen her taking calls at the cashier,

18    at the bar, and also when it was busy to instruct a few of the

19    wait staff.

20    Q.  But you just testified you did not interact with her on the

21    several occasions you saw her, right?

22    A.  I did not.

23    Q.  Do you understand you are testifying under penalty of

24    perjury?

25    A.  I understand.
```

J4MTLI2                      Wu - Cross

1    Q.  You also testified you did not know her name, right?

2    A.  Yes.

3    Q.  When did you first become aware of her name?

4    A.  Approximately after I went to work after July 2013.

5    Q.  What's her name?

6    A.  I don't know.

7    Q.  You just testified before this question you had been aware

8    of her name in 2013 and then the immediate following question

9    you say you don't know her name, so which is the two, sir?

10   A.  I didn't say I know her name.  When did I say that?

11   Q.  You did not say you know her name, that's your testimony,

12   is it correct, sir?

13   A.  I don't know what her name is.

14   Q.  As you sit here now at this minute, do you know who's the

15   lady who testified early this morning?

16   A.  I know her but I don't know her name.

17   Q.  I direct your attention to your paragraph six of your

18   affidavit.  You said during your employment you had a lady

19   boss.

20   A.  Yes.

21   Q.  And who is this lady boss?

22   A.  We all call her boss lady.

23   Q.  I know, but who is this boss lady or lady boss?

24   A.  I don't know her name however.

25   Q.  And how old, approximately, this lady boss was?

J4MTLI2                        Wu - Cross

1    A.  Her age at that time or now?

2    Q.  You can testify as to at that time and now.

3    A.  At that time I think she should be around 45 or so, more or

4    less.

5    Q.  So in this case it's going off of five years, so she should

6    be around 50, right?

7    A.  Just an approximation from the way I observed about her, I

8    don't really know her actual age.

9    Q.  Did she appear here today, the lady boss?

10   A.  No.

11   Q.  So in paragraph six of your affidavit you said -- you

12   stated Jian Ping Chen is the person you called lady boss.  Did

13   you say that?

14   A.  Yes.

15   Q.  So how -- by the way, who draft this affidavit for you?

16   A.  My attorney.

17   Q.  So how did your attorney know the lady boss name when you

18   not even know the lady boss name?

19   A.  I don't know.

20   Q.  Did you ever tell your attorney what's the name of your

21   lady boss?

22   A.  No.

23   Q.  So sir, this affidavit was not translated to you, is that

24   correct?

25   A.  It was translated.

J4MTLI2                         Wu - Cross

1            THE COURT:  Who was the translator?

2            THE WITNESS:  A Chinese person at the attorney's

3   office.

4   Q.  And when you sit down and sign this affidavit, who was the

5   attorney sitting down with you?

6   A.  That would be the attorney at the desk.

7            THE COURT:  You mean Mr. Schweitzer.

8            THE WITNESS:  Yes.

9   Q.  Was Mr. Troy also present, John Troy, T-R-O-Y?

10  A.  He was not.

11  Q.  So paragraph six, the name of lady boss was not coming from

12  you, right?

13  A.  It's not.

14           THE COURT:  Just for clarity, my own clarification,

15  the person you know to be lady boss was not in the courtroom

16  today, is that correct?

17           THE WITNESS:  No.

18           THE COURT:  Okay.

19  Q.  Do you know who is Hui Chen, H-U-I  C-H-E-N?

20  A.  No, I don't.  Matter of fact, I have not heard that name

21  before.

22  Q.  Do you know who is Hui Chen's wife?

23  A.  I don't.  No, I don't.  I don't know the marital status or

24  relationships.

25  Q.  In fact, you don't even know whether Hui Chen was married

J4MTLI2                         Wu - Cross

1    or not, right?

2    A.  I don't know.

3    Q.  So do you understand when you sign an affidavit you are

4    also subject to the penalty of perjury?

5    A.  Yes.

6    Q.  I direct your attention to the first sentence of paragraph

7    nine of your affidavit.  It says Jian Ping Chen is the wife of

8    Hui Chen.  Do you see that?

9    A.  Is that what it says, that she's Hui Chen's wife?

10   Q.  Yes.  Do you see that?

11   A.  Yes.

12   Q.  Did anyone translate this sentence to you?

13   A.  Yes.

14   Q.  So why did you sign a document saying Jian Ping Chen is the

15   wife of Hui Chen when you don't even know if Hui Chen is

16   married?

17   A.  I don't really know her that well.  I knew the fact that

18   she is the wife from what my colleague told me.

19              MR. XUE:  Objection, move to strike, hearsay.

20              THE COURT:  Sustained.

21   Q.  I direct your attention to paragraph 2 of your affidavit.

22   It says, "I have personal knowledge of the matters stated

23   below."  Do you see that?

24              You saw that, right?

25   A.  Yes.

J4MTLI2                        Wu - Cross

1    Q.  So in fact, as you sit here today, you don't know if Wu

2    Chen was married during the time of your employment, right?

3    A.  I didn't know.

4    Q.  So someone just put it in your affidavit without you even

5    know it's on an affidavit, right?

6    A.  No.

7    Q.  And you testified earlier you did not have interaction with

8    Jian Ping Chen on a few occasions when you saw her in a

9    restaurant, is that correct?

10   A.  Correct.

11   Q.  So is it fair to say she did not give you any instruction

12   how to perform your work?

13   A.  Correct.

14   Q.  Paragraph nine you stated Jian Ping Chen will give me

15   instructions about what orders had been placed and where to

16   deliver them.

17   A.  No interaction except what I wrote here means that when it

18   was busy she said come here and make this delivery.

19   Q.  And this person you said she is the lady boss you were

20   referring to, right?

21   A.  That would be the lady that was here first thing in the

22   morning.

23   Q.  So you just changed your testimony now, you say you did

24   have interaction with her?

25   A.  I meant to say that we did not have any verbal

J4MTLI2                         Wu - Cross

```
1    communication except there was no interaction except when it
2    was busy she did say hurry and make the delivery.
3    Q.  Did anyone tell you today how to testify?
4    A.  I don't understand what you mean.
5    Q.  Did anyone tell you what to say when you are on the witness
6    stand?
7    A.  No.
8    Q.  When you were working at the Ichiro Sushi on Second Avenue
9    Manhattan, who determined your pay?
10   A.  That would be Mr. Wang at the table.
11   Q.  Anyone else determining your pay?
12   A.  No.
13   Q.  Did anyone -- who is the person determining how to pay you,
14   the manner of pay?
15   A.  That would be Mr. Wang.
16   Q.  Anyone else?
17   A.  No.
18   Q.  Who would be the person determining your work schedule?
19   A.  Mr. Wang.
20   Q.  No one else?
21   A.  Well, all I'm saying is he's the person that consistently
22   set my salary and arranged my work.
23   Q.  Did the lady who testified first this morning ever
24   determine your pay, the manner of pay or work schedule, your
25   workload, any work tasks?
```

J4MTLI2                          Wu - Cross

1    A.  As I testified just now, I did say that because she rarely

2    shows up, she comes on rare occasions, and only when it's busy

3    would she on those occasions sometimes instruct as to delivery.

4    Q.  In fact, she never paid you, right?

5    A.  No.

6    Q.  And she never set your pay, right?

7    A.  No.

8    Q.  She never controlled your work schedule or your workload or

9    your work tasks, right?

10   A.  Correct.

11   Q.  So I direct your attention to paragraph 12.  You said Jian

12   Ping Chen was one of the persons who determined your rate of

13   pay, manner of pay, work schedule, workload and task.  This

14   statement is false, is that correct?

15   A.  As I said before, she came only occasionally, rarely.

16   Q.  Sir, I direct --

17          MR. XUE:  Your Honor, may you direct -- may you ask

18   the witness to answer the question?

19          THE COURT:  The witness has to answer the question

20   posed by counsel, and the question is whether the statement in

21   paragraph 12 is accurate when it describes Ms. Jian Ping Chen

22   as someone who would pay me my wages in cash, determine my rate

23   of pay and method of pay and work schedule and work tasks.  Is

24   that accurate or not accurate?

25          THE WITNESS:  Yes, they are accurate.

J4MTLI2                          Wu - Cross

1    BY MR. XUE:

2    Q.  Even though you testified she never paid you, you say that

3    statement is accurate, right?

4    A.  Well, at the time it was Mr. Wang who was managing the

5    restaurant.

6    Q.  Did you ever work with Mr. Hidalgo?

7           THE COURT:  You can stand up.

8    A.  Yes.

9    Q.  For how long did you work with him?

10   A.  I think from July 2013 until October 2014.

11   Q.  So when Mr. Hidalgo said he did not know Ms. Jian Ping

12   Chen, you think he's lying, Mr. Hidalgo is lying?

13          THE COURT:  Mr. Xue, that's unhelpful.

14          MR. XUE:  I'll withdraw that question.

15          THE COURT:  Thank you.

16   Q.  Do you know whether Jian Ping Chen have any children, the

17   first lady who testified today, does she have any children?

18   A.  No.

19   Q.  You don't know whether she has children or you think she

20   did not have children -- she does not have children?

21   A.  I don't know whether she have children or not, but the boss

22   lady that they call boss does have a daughter.

23   Q.  The boss lady is not the lady who testified today, right?

24   A.  No.

25          THE COURT:  Just for you're awareness, Mr. Xue, you

J4MTLI2                          Wu - Cross

1   have used the 30 minutes allotted for this witness.  You can go

2   over, but you would be borrowing time from another witness.

3              MR. XUE:  I would like to borrow some time.

4              THE COURT:  The total time remains the same.

5              MR. XUE:  Understood.

6   BY MR. XUE:

7   Q.  Do you know Jing Li, J-I-N-G  L-I?

8   A.  The daughter of the boss lady.

9   Q.  So Jing Li is not the daughter of the lady who testified

10  today, right?

11  A.  I don't really know, but I'm not sure.

12  Q.  But you just testified she's the daughter of lady boss.

13  A.  Yes.

14  Q.  And I direct your attention to paragraph 13.  You said Jing

15  Li is the daughter of Hui Chen and Jian Ping Chen.  Do you see

16  that?

17  A.  Yes.

18  Q.  Did anyone translate this to you?

19  A.  Yes.

20  Q.  So it's incorrect, right?  Jing LI is not the daughter of

21  Jian Ping Chen, right?

22  A.  What does this paragraph say again?

23  Q.  Did you ever tell anyone Jing Li is the daughter of Jian

24  Ping Chen?

25  A.  Correct.

J4MTLI2                          Wu - Cross

1   Q.  Is it correct you did tell someone it's correct, the

2   statement?

3   A.  It's correct what it says here.

4   Q.  That was not my question, sir.  My question is did you tell

5   anyone Jean Li is the daughter of Jian Ping Chen.

6   A.  I did.

7   Q.  So even though you did not even know whether Jian Ping Chen

8   have any children, you tell someone the name of her children,

9   right?

10  A.  During work there were conversations, question asked, and

11  it was stated that she was the daughter of the boss lady.

12  Q.  But we just established Jian Ping Chen is not the boss

13  lady, is that correct?

14  A.  Correct.

15  Q.  Sir, when you first filed this action against Jian Ping

16  Chen, you believed Jian Ping Chen was married to Jing Li,

17  right?

18          THE INTERPRETER:  Could I have the question again?

19  Q.  When you first commenced this action, you believed Jian

20  Ping Chen was married to Jing Li, right?

21  A.  What do you mean, husband and wife?

22  Q.  Yeah.

23  A.  What's your question again?

24          THE COURT:  Sir, to the witness, it doesn't matter

25  what's on the paper right now, you just have to answer the

J4MTLI2                          Wu - Cross

1   attorney's questions based on your knowledge.  That is what you

2   have sworn an oath under the penalty of perjury to do.  So you

3   just listen to his questions and answer them.  If you don't

4   know, then the truthful answer is:  I don't know.  What you may

5   not do is provide information because you see it written on the

6   declaration or for some other reason.  You just provide what

7   you know in honest response to the question.

8              THE WITNESS:  Okay.

9   BY MR. XUE:

10  Q.  I repeat my question again.  When you commenced the action,

11  you claim Jian Ping Chen was married to Jing Li, right?

12  A.  No, Chen Jian Ping and Jin Li are husband and wife, no.

13  Q.  I direct your attention --

14             MR. XUE:  May I approach?

15             THE COURT:  What are you showing?

16             MR. XUE:  Defendant's Exhibit A, the first amended

17  complaint, paragraph 29.

18  Q.  Is that personal knowledge of plaintiff's' Jian Ping Chen

19  and Jing Li are husband and wife.  Do you see that?

20  A.  You mean now?

21  Q.  Yes.  Do you see it now?

22  A.  Yes.

23  Q.  And that statement is false, right?

24  A.  Correct.

25  Q.  But at that time you thought they were married, right?

J4MTLI2                        Wu - Cross

1    A.  Yes.

2    Q.  And in fact, in the time you commenced this action you

3    believed Jian Ping Chen was a male, right?

4    A.  Correct.

5    Q.  So even though you claim that you saw Jian Ping Chen a few

6    times at a restaurant, did not talk to her at all, but later on

7    she may direct to you do some work, you don't even know if

8    she's male or female in 2018 when you filed this lawsuit,

9    right?

10   A.  Yes.

11          MR. XUE:  I have no more questions.

12          THE COURT:  Mr. Yan.

13          MR. COOPER:  Maybe it's Mr. Schweitzer's --

14          THE COURT:  No, thank you, go ahead.

15   CROSS-EXAMINATION

16   BY MR. YAN:

17   Q.  Good afternoon, Mr. Wu, my name is David Yan.

18          You just testified that you did not know Hui Chen,

19   correct?

20   A.  That's right, I don't know.  I don't know.  I only heard

21   it, heard about it.

22   Q.  Did you ever speak to him during the past?

23          THE COURT:  Sorry, I apologize who are you asking

24   about?

25   Q.  Did you ever speak to Hui Chen in the past?

J4MTLI2                          Wu - Cross

1   A.  He made a call to me once, made a phone call to me once.

2   Q.  And if you did not know him, why did he make a phone call

3   to you?

4   A.  It was after I no longer worked there.  It was at night and

5   he called me.  He identified himself, introduced himself, who

6   he was to me, meaning she told me -- he, sorry, he told me who

7   he was.

8   Q.  And so if you spoke to him, you were supposed to know him,

9   right?

10  A.  I've seen him at the restaurant, but we never interact,

11  have conversation.

12          THE COURT:  Sorry, just for total clarity, the he and

13  him that this conversation is referring to H-I-U?

14          MR. YAN:  H-U-I.

15          THE COURT:  H-U-I?

16          MR. YAN:  Yes, I believe.

17          THE COURT:  Sometimes spelled H-I-U.

18          MR. YAN:  Which is incorrect.

19          THE COURT:  Do you remember when I asked counsel to

20  write down every name that would be mentioned during the course

21  of trial?  I never did get that, I just got the witnesses.  And

22  Mr. Hui Chen is not a witness, correct?

23          MR. YAN:  He's not a party here.

24          THE COURT:  Right.  The person you are talking about,

25  Mr. Yan, is Hui Chen, H-U-I  C-H-E-N?

J4MTLI2                          Wu - Cross

1              MR. YAN:  Yes.

2              THE COURT:  Mr. Wu, is that your understanding OF the

3     person that you're referring to in response to questions from

4     Mr. Yan?

5              THE WITNESS:  Correct.

6              THE COURT:  Okay.  Go ahead, Mr. Yan.

7     BY MR. YAN:

8     Q.  So you knew Mr. Hui Chen when you worked in the restaurant

9     in Ichiro Sushi, correct?

10    A.  Well, it was during a co-worker conversation that they said

11    that the ultimate or the big boss, who that was.

12    Q.  Have you ever met Hui Chen in the restaurant when you were

13    in Ichiro Sushi in the past?

14    A.  Yes.

15    Q.  And did Hui Chen ever talk to you about your work schedule?

16    A.  No.

17    Q.  During your direct -- directing your attention to your

18    statement declaration February 12, you stated that Hui Chen

19    along with somebody else determined your regular pay, method of

20    pay, rate of pay, work schedule, workload and tasks, correct?

21    A.  Yes.

22    Q.  And you just testified earlier that who determined your

23    work schedule, you point to Mr. Wang sitting at the table here

24    saying it was only Mr. Wang and no one else, correct?

25    A.  Yes.

1   Q.  So which version is more accurate, your testimony in court

2   or your statement in the declaration?

3   A.  The affidavit.

4   Q.  Did you also testify earlier today saying that who

5   determined your rate of pay when you worked there, you

6   testified under oath that it was also Mr. Wang sitting at the

7   table here and no one else, correct?

8   A.  Well, what I'm trying to say is that between the discussion

9   of -- it was Mr. Wang who directly hand me it after he told me

10  he had a discussion with him.

11        MR. YAN:  Your Honor, plaintiff's answer was not

12  responsive, I would move the Court to strike the answer.

13        THE COURT:  Why don't you repeat the question and

14  we'll get clarification.

15  Q.  My question was you testified earlier today it was Mr. Wang

16  sitting at the table in the courtroom here determined the rate

17  of your pay and no one else determined your rate of pay,

18  correct?

19  A.  Yes.

20  Q.  And direct your attention to paragraph 12, again, you

21  mentioned Hui Chen also determined your rate of pay and method

22  of pay, correct?

23  A.  Correct.

24  Q.  Again, which version of your testimony is more accurate?

25  A.  When I went, Chen Hui the big boss, but my pay was after

J4MTLI2                          Wu - Cross

1    their discussion, however, it was Mr. Wang who directly

2    personally hand me the payment itself.

3    Q.   How often would you see Hui Chen in the restaurant in

4    Ichiro Sushi when you worked there in the past?

5    A.   Didn't show up there a lot, did not.

6    Q.   There were occasions when you saw Mr. Hui Chen discussed

7    your rate of pay and schedule, work schedule workload with

8    Mr. Wang sitting in the courtroom today?

9    A.   Well, Mr. Wang would tell me that the salary is a rate set

10   or term determined by the company.

11   Q.   Did Mr. Wang ever tell you -- strike that.

12           Mr. Wang did not tell you the rate of pay and schedule

13   with Hui Chen, correct?

14   A.   Well, he would say the big boss, and the big boss would be

15   Hui Chen.

16   Q.   What day of the month and year Mr. Wang sitting in the

17   courtroom today told you he discussed with Hui Chen about your

18   rate of pay and a schedule of work?

19   A.   It was initially when I first went at the time my rate of

20   pay was being set at that time.

21   Q.   And how Jian Ping Chen in determining your rate of pay and

22   method of pay and work schedule?

23   A.   Well, it was Mr. Wang who told me that this salary is set

24   by the company.  So it was set by the company and my

25   understanding is the big boss of the company, the big boss of

J4MTLI2                          Wu - Cross

1    the company would be Hui Chen.

2    Q.  Did you have a problem communicate with interpreter?

3    A.  No.

4    Q.  Did you understand the interpreter?

5    A.  Yes.

6    Q.  My question was how Jian Ping Chen played role --

7              THE COURT:  You said "played a role?"

8    Q.  -- played a role in determining your rate of pay and method

9    of pay and work schedule, can you respond to my question?

10   A.  I don't understand.

11   Q.  I draw your attention to paragraph 12 in your declaration.

12   You claim that Jian Ping Chen also determined your rate of pay,

13   method of pay, work schedule, workload, and tasks, correct?

14   A.  Yes, yes, yes.

15   Q.  Do you have the personal knowledge about how Jian Ping Chen

16   determined your rate of pay, method of pay, work schedule,

17   workload, tasks when you made this declaration?

18   A.  This paragraph?

19   Q.  Do you have personal knowledge again what is in this

20   declaration?

21   A.  Yes.

22   Q.  If yes, tell us how Jian Ping Chen determined your rate of

23   pay, method of pay, work schedule and workload.

24   A.  Well, set a monthly rate of how much and what task or tasks

25   to do each workday, and from what time I go to work to what

J4MTLI2                        Wu - Cross

1   time I get off work and what kind of work I was supposed to do

2   once I am at work.

3   Q.  You spoke to Jian Ping Chen directly at the time about a

4   rate of pay, methods of pay, work schedule, workload, correct?

5           THE COURT:  Let's do one at a time, maybe that will

6   help.

7   Q.  Based on testimony you spoke to Jian Ping Chen regarding

8   your rate of pay, correct?

9   A.  It was Mr. Wang who said that there was a discussion and

10  then it was the company who set my rate of pay, so they had a

11  discussion about it.

12  Q.  And you testified earlier every time you said the company

13  but you never testified that Mr. Wang mentioned Hui Chen's name

14  and Jian Ping Chen's name, correct?

15  A.  I don't understand.

16  Q.  What part of my question did you not understand?

17          THE COURT:  Please, you can rephrase.

18          MR. YAN:  Sure, yes.

19  Q.  Why you did not tell us when Mr. Wang told you about your

20  rate of pay and it was determined -- strike that.

21          Why didn't you tell us Mr. Wang mentioned Hui Chen and

22  Jian Ping Chen when he talked to you about your rate of pay?

23  A.  I don't understand the question.  Can you repeat the

24  question?

25  Q.  Why you did not tell us earlier in your testimony that

J4MTLI2                          Wu - Cross

1     Mr. Wang did not tell you he spoke to Hui Chen and Jian Ping

2     Chen to determine your rate of pay?

3     A.   I still don't understand your question.

4              MR. YAN:   Your Honor, I'll move on.

5              THE COURT:   Okay.

6     Q.   Did you testify that it was Mr. Wang managed the restaurant

7     when you worked there in the past?

8     A.   Most of the time it was him.

9     Q.   Let me direct your declaration paragraph seven, you stated

10    that Hui Chen was the boss controlling everything at Ichiro

11    Sushi.

12    A.   Correct.

13    Q.   So which version of the testimony that's more accurate?

14    A.   I don't know what you're saying.

15    Q.   So you do not have an answer for us, correct?

16    A.   Can you repeat that?

17    Q.   Which one do you want me to repeat?

18             THE COURT:   Just repeat the question.

19    Q.   You do not have an answer for us, correct?

20    A.   I don't understand what you're saying.  I don't understand

21    what you're asking.

22    Q.   Let me ask you, why you made this declaration dated

23    February 4, 2019, were you aware what you talk about in this

24    declaration?

25             THE COURT:   I'm going to give the interpreter a short

J4MTLI2                          Wu - Cross

1    break.
2             Mr. Yan, given that we're going through the
3    interpretation and referencing the declaration, if you can keep
4    it as simple as you can and make your questions non-compound, I
5    think we'll get where we're trying to get.
6             Short break.
7             To be clear, counsel should not speak to a witness
8    while they're under oath on cross-examination absent some
9    unusual circumstances.  That would be inappropriate coaching,
10   and if there's any need to do that for something other than
11   pure logistical issues, you must confer with opposing counsel.
12             (Recess taken)
13             THE COURT:  Mr. Wu may come back to the witness stand.
14             Mr. Yan, you may continue.
15   BY MR. YAN:
16   Q.  Mr. Wu, do you recall you made a declaration on
17   November 28, 2018?
18   A.  2018?  No.
19   Q.  November 28, 2018.
20   A.  No.
21             MR. YAN:  Your Honor, I want to mark Troy Exhibit
22   Number J on the Defendant's Jian Ping Chen to Defendant Number
23   16.
24             THE COURT:  I'm sorry, what's the mark?
25             MR. YAN:  That's Defendant Jian Ping Chen's Trial

J4MTLI2                          Wu - Cross

1    Exhibit Number -- letter J as to Defendant Ichiro Sushi Trial

2    Exhibit Number 16.

3              THE COURT:  So you're marking it as -- well, let's

4    start with this, let me see the document, please.

5              Affidavit of Jainhui Wu, which is document number

6    199-3 in 14 CV 10242, dated November 28, 2018.  And this

7    document that I've just described, Mr. Yan, you want to mark as

8    a trial exhibit Defendant New Ichiro Sushi --

9              MR. YAN:  Number 16.

10             THE COURT:  -- Number 16.  Okay.  Do you have another

11   copy or not?

12             MR. YAN:  I don't have another one.

13             THE COURT:  I marked it defendant symbol NIS, New

14   Ichiro Sushi Number 16, because I have it marked, so that's

15   what I wrote on it.

16   Q.  Mr. Wu, have you ever seen this document?

17   A.  I don't remember exactly.

18   Q.  Turn to signature page, do you see your signature?

19   A.  Yes.

20   Q.  Did you sign this document on November 28, 2018?

21   A.  I don't remember clearly.

22   Q.  Did you sign this document --

23             THE COURT:  Just a minute, let me ask Mr. Wu, we have

24   been discussing your trial affidavit before the break, the one

25   that you signed on February 24th, 2018.  With relationship to

J4MTLI2                         Wu - Cross

1    this case, were there any other affidavits or declarations that

2    you prepared and signed?

3                 THE WITNESS:  Yes.

4                 THE COURT:  How many other declarations or affidavits?

5                 THE WITNESS:  Oh, no more besides these two, no more.

6                 THE COURT:  No more besides these two?

7                 THE WITNESS:  I don't remember exactly, but there

8    shouldn't be any more.

9                 THE COURT:  Okay.  I want to understand, you said

10   there shouldn't be more than one or there shouldn't be more

11   than two?

12                THE WITNESS:  There should only be one.

13                THE COURT:  So you only remember signing one

14   declaration in the case, is that what you're saying?

15                THE WITNESS:  I don't remember clearly.

16                THE COURT:  Do you remember clearly signing the one

17   that we were discussing before the break dated February 4th,

18   2018?

19                THE WITNESS:  There isn't one from 2018, this one is

20   2019.

21                THE COURT:  My mistake, thank you.  Do you remember

22   clearly signing the one dated February 4th, 2019?

23                THE WITNESS:  I do remember, yes.

24                THE COURT:  Okay.  And then the question is do you

25   have any memory of signing any other declarations other than

J4MTLI2                          Wu - Cross

1   the February 4th, 2019 declaration?

2           THE WITNESS:  Probably should be no more, but I don't

3   remember very clearly.

4           THE COURT:  Okay.  Go ahead.

5   BY MR. YAN:

6   Q.  So you just stated that you signed the declaration on

7   November 28, 2018, correct?

8   A.  I can only say it looks familiar or similar, the name is

9   very similar but I cannot remember exactly.

10  Q.  And I direct your attention to page 4 of the document dated

11  November 28, 2018.  Was that your signature?

12  A.  It looks familiar.

13  Q.  Did you sign this document?

14  A.  I don't remember clearly.

15  Q.  Your counsel submit this document to the Court on

16  November 29, 2018, represent to the Court that it was your

17  declaration signed by you, you want to say it was not your

18  declaration?

19  A.  No.

20  Q.  Again, is this your declaration represent your personal

21  knowledge whatever you knew about the case?

22  A.  Are you talking about this copy here?

23  Q.  I'm talking about the November 28, 2018 declaration signed

24  by you and authorized by the counsel sitting in the first table

25  on the right side.

J4MTLI2                         Wu - Cross

1   A.  I don't remember very clearly.

2   Q.  You do not remember your statement or you do not remember

3   ever signing this document?

4   A.  I don't remember very clearly about the date.

5   Q.  The date is clear, indicated on the document, November 28,

6   2018, and authorized by your attorney, Mr. Aaron Schweitzer, on

7   November 28, 2018.  Do you remember that?

8   A.  I don't remember very clearly.

9   Q.  And I ask you to answer the question seriously.  When you

10  signed this document, did you sign this one in front of your

11  counsel, Aaron Schweitzer, on November 28, 2018?

12  A.  I no longer remember very clearly because it's been a long

13  while, a long time ago.

14  Q.  I understand you might no longer remember clearly, but I

15  present the document to refresh your memory.  In this document

16  it was on the top of page 4, it was your signature, and

17  underneath your signature it was signature of the counsel and a

18  stamp Aaron Schweitzer.  When he notarized signature he was

19  supposed to see your signature before he could authorize the

20  date November 28, 2018.  Tells us one more time when your

21  counsel notarized the signature, did you sign your signature

22  before him?

23  A.  I don't remember very clearly.

24  Q.  Did you ever make this declaration submit to the Court

25  system under Docket Number 199-3 filed on November 29, 2018?

J4MTLI2                          Wu - Cross

1              THE COURT:  Mr. Yan, you can't get blood from a stone.

2     It's been asked and answered.  The witness is testifying he has

3     no specific memory of signing -- my understanding of the

4     testimony is he has no specific memory of signing the document.

5     He can't say whether he signed it in front of his counsel.  I

6     think that's where we are.  You asked it a number of times.

7              MR. YAN:  But your Honor, this case may go to another

8     direction, we have the Court, because there's a content --

9              THE COURT:  Are you trying to move it into evidence?

10             MR. YAN:  Yes.

11             THE COURT:  Okay.  So why don't do you that and then

12    we can take it from there.  That's the purpose.  You're trying

13    to lay a foundation in order to move it in evidence, is that

14    right?

15             MR. YAN:  Yeah, because this is submitted to the Court

16    ECF.

17             THE COURT:  I understand that, I'm as curious as you

18    are, but you've asked the question a number of times and you

19    keep getting the same:  I don't know.  So we need to try and

20    unwrangle.

21             MR. YAN:  Mr. Schwartz, I don't want to get into a

22    direction something that's he tried to do his best, however if

23    the testimony like this means the fraudulent documents

24    submitted to the Court.

25             THE COURT:  What documents?

J4MTLI2                           Wu - Cross

1            MR. YAN:  Are fraudulent documents.

2            THE COURT:  There may be, we don't know, but you're

3    moving it in, you're seeking to move what we marked as --

4            MR. YAN:  Your Honor, the only way --

5            THE COURT:  You're moving it in evidence or not?

6            MR. YAN:  I move this declaration marked as Defendant

7    Number 16 into the evidence.

8            THE COURT:  Mr. Schweitzer, do you have any objection?

9            MR. SCHWEITZER:  No.

10            THE COURT:  It is admitted.

11            (Defendant's Exhibit New Ichiro Sushi 16 received in

12    evidence)

13            MR. YAN:  Thank you, your Honor.  Can I ask him if he

14    cannot recall the content in this document?

15            THE COURT:  You may.

16            MR. YAN:  Thank you.

17    BY MR. YAN:

18    Q.  Sir, in the document in front of you dated November 28,

19    2018, you never mentioned Mr. Wang tell you your rate of pay,

20    work schedule, duties, workload related to your employment

21    before he purchased the restaurant, why?

22    A.  I don't understand.

23    Q.  Let me repeat my question again.  In this document?

24            THE COURT:  Let me stop you again, Mr. Yan.  I think,

25    just to be practical, what we know is the witness doesn't

J4MTLI2                        Wu - Cross

1    remember specifically this document and he is staring at a

2    document in English, which we know he doesn't understand.

3    That's not your fault, but to the extent you're trying to do

4    something with it that requires his understanding of it, you

5    either need to ask the interpreter to translate a specific

6    sentence --

7              MR. YAN:  Sure.

8              THE COURT:  -- which would be burdensome and take a

9    long time, and I think at the end of that we're likely to get

10   the same answer, but if you want to try that you can, but let's

11   not pretend that someone who doesn't read English can read this

12   document.

13             MR. YAN:  Okay.

14             THE COURT:  Thank you.

15             MR. YAN:  Your Honor, may I trouble the interpreter to

16   translate paragraph 14 on page 3 to Mr. Wu?

17             THE COURT:  Okay.

18             (Pause)

19             THE COURT:  It's been translated, Mr. Yan.  Your

20   question?

21   BY MR. YAN:

22   Q.  Mr. Wu, did you provide this information to your counsel on

23   November 28, 2018?

24   A.  Yes.  In regard to the content, yes.

25   Q.  So Mr. Wang was not owner when determining your rate of

J4MTLI2                           Wu - Cross

1   pay, work schedule, and other things related to your employment

2   before he bought a restaurant called Ichiro Sushi, correct?

3   A.  He didn't purchase but rather he became a shareholder.

4   Q.  However, you testified in the declaration that back on

5   November 28, 2018 saying Mr. Wang bought a restaurant, correct?

6   A.  Correct, yes.

7           MR. YAN:  And Mr. Interpreter, if I can trouble you to

8   translate paragraph 11 to Mr. Wu.

9   A.  Yes, correct.

10  Q.  Why would you change your testimony in February 2019 to add

11  Mr. Wang saying that Mr. Wang also determined your rate of pay,

12  work schedule, duties, workload, but you did not alert Mr. Wang

13  in this one back in November 2018?

14  A.  I don't understand your question.

15  Q.  Let me repeat again.

16          THE COURT:  Mr. Yan, I think there's time frame issues

17  in the question that you're asking, that is to say what is the

18  truth of who is doing what within different time periods.  And

19  you need to be specific on that in addition to referring, if

20  you want, to the testimony from a certain period or point

21  compared to testimony at a later point.  So I do think there is

22  confusion in the question you're asking and you need to clarify

23  both sets of time frames.

24          MR. YAN:  Sure.

25  BY MR. YAN:

J4MTLI2                           Wu - Cross

1   Q.  Mr. Wu, you claim that Mr. Wang determined your rate of

2   pay, method of pay, work schedule, and other things related to

3   your employment in your February 2019 declaration, correct?

4   A.  Yes, correct.

5   Q.  In your November 2018 declaration you did not claim

6   Mr. Wang determined your rate of pay, work schedule, duties,

7   workload and other things related to your employment in

8   paragraph 11 of the declaration in November 2018, correct?

9   A.  Yes.

10  Q.  What made you to change your testimony in February 2019

11  away from your November 2018 testimony?

12  A.  Did not make any change, did not change.

13  Q.  Which version of your declaration is more accurate, I mean

14  your November 2018 declaration regarding Mr. Wang's role

15  relating to your employment or February 2019's declaration

16  regarding your employment involving Mr. Wang?

17  A.  Well, the previous attorney touched on the same questions,

18  and I believe both copies are relevant and accurate.

19  Q.  What do you mean relevant and accurate?

20  A.  I believe I answered the same exact question from the

21  previous attorney.

22  Q.  If you know, when did Mr. Wang bought the restaurant New

23  Ichiro Sushi -- strike that.  When did Mr. Wang bought the

24  restaurant from Ichiro Sushi?

25  A.  Based on our conversation, I think it was around July or

J4MTLI2                    Wu - Cross

1    July 16 also happened to be when I first went there, of 2013,

2    but I don't remember exactly.  However, I no longer remember

3    exactly, I don't remember very clearly.

4    Q.  What did you notice the change of ownership on July 2013?

5    A.  When he was basically making everybody's working schedule

6    and after he was basically managing everything.

7              THE COURT:  Who do you mean by "he?"

8              THE WITNESS:  Mr. Wang.

9    Q.  Was your work schedule ever changed when you worked for

10   Ichiro Sushi restaurant?

11   A.  There was one change.

12   Q.  When was the change?

13   A.  Around October of 2014.

14   Q.  You said there was change of ownership on July 2013, did

15   you see any change to the restaurant name?

16   A.  No.

17   Q.  When did you notice the changed name of the restaurant?

18   A.  Never did.

19   Q.  Have you ever signed any employment form October 1st, 2014?

20   A.  I remember, yes.

21             THE COURT:  Mr. Yan, for your awareness, you just

22   about hit the time that that you had allotted for this witness.

23   And again, you're free to borrow from other witnesses, but the

24   total time will remain the same.

25             MR. YAN:  Probably another five minutes.

J4MTLI2                          Wu - Cross

 1                THE COURT:  Okay.

 2                MR. YAN:  Your Honor, I would mark Defendant New

 3    Ichiro Sushi Trial Exhibit Number 1.

 4                THE COURT:  So Defendant New Ichiro Sushi Exhibit

 5    Number 1.

 6                MR. YAN:  Yes.

 7                THE COURT:  Okay.

 8                MR. YAN:  I want to approach, your Honor.

 9                THE COURT:  Go ahead.

10                MR. YAN:  That's already in the binders.

11                THE COURT:  And it's marked Exhibit 1?

12                MR. YAN:  Yes.

13    Q.  Mr. Wu, have you ever seen the first page, employment form?

14    A.  I have, yes.

15    Q.  Have you ever signed this form?

16    A.  Yes.

17    Q.  Have you ever signed on October 1st, 2014 indicating you're

18    employed by new Ichiro Sushi restaurant?

19    A.  This was a maked up signature that I was asked to make up

20    to sign later.

21    Q.  Have you ever signed --

22                THE COURT:  Just a second, what does that mean?  The

23    signature is not your signature?

24                THE WITNESS:  It is my signature.

25                THE COURT:  Okay, so you said it was asked to make up

                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

J4MTLI2                         Wu - Cross

1    to sign later, what does that mean?

2              THE WITNESS:  Meaning during the first period of my

3    employment from roughly July 2013 until October 2014, and then

4    after that, after October, after they start to use the punch

5    card machine, then I was asked to sign later at that time.

6              MR. YAN:  Your Honor, defense motion to strike answer

7    that is unresponsive and inconsistent with the piece of

8    document.

9              THE COURT:  It was responsive to my question and I'm

10   trying to learn the truth of what happened here.  And this

11   document is not in evidence, so you can't use it to impeach the

12   witness's testimony.  So overruled and overruled.

13   Q.  Did you sign this document on October 1st, 2014?

14   A.  Correct.

15   Q.  Did you sign this document on October 6, 2014?

16   A.  Well, the name is my name, everything else I didn't write,

17   including the date.

18   Q.  And did you work for new Ichiro Sushi restaurant after

19   October 6, 2014?

20   A.  No.

21   Q.  Did you go back to New Ichiro Sushi restaurant after

22   October 6, 2014 to sign this document?

23   A.  No, this is October 1st.

24   Q.  I direct you to the bottom of the signature dated

25   October 6, 2014.  Did you go back to the restaurant after

J4MTLI2                        Wu - Cross

1   October 6, 2014 to sign this document?

2   A.  Well, as I mentioned just now, other than the name, I know

3   nothing about all the rest of the writing that's on the page

4   over here, over here, over there, I didn't write it.

5   Q.  Are those your signatures on this document?

6   A.  Yes, so both signatures, the one on top and the bottom are

7   my signatures.

8   Q.  You did not quit from the work in Ichiro Sushi restaurant

9   before October 6, 2014, correct?

10  A.  I don't remember the exact date that I left, but I left

11  sometime in October.

12          THE COURT:  I want to make sure I understand.  You've

13  indicated in the two places that says signature, you signed.

14  But you've also said you don't know anything else about the

15  document.  Did you sign a blank document or you just didn't

16  understand what was filled in?

17          THE WITNESS:  Other than the signature, the signature

18  of my name, I did not write or filled in anything else on this

19  page.

20          THE COURT:  Was it filled in when you signed it?  Had

21  it been filled in been someone else before you signed it?

22          THE WITNESS:  Yes, yes, except for the date, the date

23  was filled in later on.  I did not write the date.

24          THE COURT:  Okay.  And you may have answered this, but

25  I will ask again because I don't recall, do you remember when

J4MTLI2                          Wu - Cross

1   you signed the document?

2               THE WITNESS:  I remember, yes.

3               THE COURT:  When.

4               THE WITNESS:  The date I don't remember.  However, I

5   definitely did not write that date that's here.  I did not.

6               THE COURT:  I understand you didn't write it.  My

7   question is do you remember when you did in fact sign it?

8               THE WITNESS:  Around October, before -- or little bit

9   before or a little bit after, exactly when I don't remember.

10              THE COURT:  Do you mean October 2014?

11              THE WITNESS:  Correct.

12              THE COURT:  Go ahead, Mr. Yan.

13              MR. YAN:  Your Honor, defendant New Ichiro Sushi and

14   Juhang Wang moves this piece of important information into the

15   evidence.

16              THE COURT:  So what's been marked as New Ichiro Sushi

17   Defendant Exhibit 1, you're moving that in evidence.  Any

18   objection?

19              MR. SCHWEITZER:  Yes.  New Ichiro Sushi Exhibit 1

20   seems to be a composite of several documents, only one has

21   questioned about them.

22              THE COURT:  Are you moving just the first page that's

23   been discussed?

24              MR. YAN:  I want to move the entire -- the Defendant's

25   Number 1 into the evidence.  The plaintiff counsel does not

J4MTLI2                        Wu – Cross

1   object.

2           THE COURT:  Do you object?

3           MR. COOPER:  Yes, I object to the introduction into

4   evidence of everything in this document after page 1 as no

5   foundation has been laid.

6           THE COURT:  Sustained.

7           MR. YAN:  So page 1 is received into evidence?

8           THE COURT:  I will receive the first page into

9   evidence.

10

11          (Defendant's Exhibit New Ichiro Sushi Exhibit 1, page

12  1 received in evidence)

13  BY MR. YAN:

14  Q.  Mr. Wu, let me direct your attention to page 2, 3 of the

15  document presented to you.  Have you ever seen these documents?

16  A.  No.

17  Q.  And if I tell you that's the accurate and computer copy of

18  the timecards originally in my hand --

19          MR. YAN:  Your Honor, may I approach?

20          THE COURT:  Sure.

21          MR. SCHWEITZER:  Page 3 or page 2?

22          MR. YAN:  Page 3 and 4.

23          THE COURT:  I can't hear you, Mr. Yan.

24          MR. YAN:  Page 3 and 4.

25          THE COURT:  You're showing the witness the original of

J4MTLI2                         Wu - Cross

1    what is photocopied as page 3 and page 4.  You may show the

2    witness that exhibit which is page 3 and 4 of Defendant 1.

3              You may inquire.

4    BY MR. YAN:

5    Q.  Mr. Wu, have you ever seen the original timecards?

6    A.  I didn't write the name, but yes, I have used these type of

7    cards to punch in, yes.

8    Q.  There's a page 3 and page 4 accurate computer copy of these

9    timecards?

10             Did you use --

11             THE COURT:  Let's assume it's an accurate copy, the

12   question is whether he's seen the timecard, right?  That

13   timecard, not one like it, but that timecard.

14             MR. YAN:  Yes.

15             THE COURT:  So ask that.

16   Q.  Have you ever seen the timecard?

17   A.  Yes.

18   Q.  Did you use this timecard to punch in or punch out when you

19   worked for New Ichiro Sushi?

20   A.  No, as it says over here, it didn't start until October, so

21   there was nothing before October.

22   Q.  Did you use that timecard for the particular day from

23   October 1st to October 6 when you worked for New Ichiro Sushi?

24             MR. SCHWEITZER:  Objection.  Those dates do not appear

25   on the timecards.

1          MR. YAN:  October 1st to October 6.

2          THE COURT:  Overruled.  You may answer.

3     A.  Yes.

4     Q.  Was a photocopy page 3, page 4, accurate in computer

5     production of this timecard?

6     A.  Yes, the front and the back, yes.

7          MR. YAN:  Your Honor, I move Defendant Ichiro Sushi

8     page 3 and page 4 into the evidence and also as to Defendant's

9     Exhibit Number 1.

10         MR. SCHWEITZER:  No objection.

11         THE COURT:  So now pages 3 and 4 of Defendant New

12    Ichiro Sushi Exhibit Number 1 are admitted.

13         (Defendant's Exhibit New Ichiro Sushi 1, pages 3 and 4

14    received in evidence)

15    Q.  Have you ever seen page 2 when you worked for New Ichiro

16    Sushi?

17    A.  No, no, matter of fact I didn't write that name either,

18    neither the date nor the name.  Over here, over here, I did not

19    sign it.

20    Q.  And turn to page 5, have you ever seen page 5 of this

21    document?

22    A.  I have, yes.

23    Q.  And on the bottom on the left lower page, was that your

24    signature?

25    A.  It is.

J4MTLI2                          Wu - Cross

1   Q.  And in the right lower hand of this page, was that the date

2   you indicated you put the date into this document?

3   A.  No.

4   Q.  When did you sign this document?

5   A.  I don't remember, I don't remember when that was.

6   Q.  When did you receive the pay for your work in New Ichiro

7   Sushi restaurant from October 1st, 2014 to October 6, 2014?

8   A.  On the date that I left.

9   Q.  So when did you leave New Ichiro Sushi restaurant?

10  A.  I don't remember exactly, but approximately October 6,

11  October 7, it should be during those dates or period.

12          MR. YAN:  Your Honor, may defendant New Ichiro Sushi

13  move page 5 of the document into the evidence.

14          MR. SCHWEITZER:  No objection.

15          THE COURT:  Page 5 of defendant New Ichiro Sushi's

16  Exhibit 1 is admitted.

17          (Defendant's Exhibit New Ichiro Sushi 1, page 5,

18  received in evidence)

19  Q.  Mr. Wu, let me direct you to Plaintiff's Exhibit Number 1,

20  page 1, in the middle of this document there's a sentence of

21  Chinese.  Do you understand this sentence?

22  A.  Exactly where?

23  Q.  Underneath your first signature.

24  A.  Yes.

25  Q.  And do you understand that sentence written in Chinese?

J4MTLI2                           Wu - Cross

1    A.  I understand it.

2    Q.  Can you tell us what the sentence means to you?

3    A.  That whatever was written above are truthful.

4    Q.  And while you worked for the restaurant, Ichiro Sushi

5    restaurant, did the restaurant provide you a bicycle to use for

6    you to make delivery?

7    A.  No.

8    Q.  And what bicycle you use to make deliveries when you work

9    for Ichiro Sushi restaurant and New Ichiro Sushi restaurant?

10   A.  Can you clarify?  Did you say one restaurant to restaurant?

11   Q.  When you worked for Ichiro Sushi restaurant, what kind of

12   bicycle you use?

13   A.  Well, initially from July 16 until sometime in November,

14   electric bike or electric moped was used, electric moped.  And

15   then the government did not allow electric moped or electric

16   bikes since November, so the boss switched back or made it all

17   bicycles.  So from then on all the way until I left, a bicycle

18   was used.

19   Q.  In your declaration in February 2019 you said that you were

20   required to purchase electric bicycle for all your work during

21   employment.  Why was that?

22   A.  I don't understand what you mean.

23   Q.  This is paragraph 26 of your declaration made in

24   February 2019.  You declared that I was required to purchase an

25   electric bicycle for $1,500 to use for making deliveries for

J4MTLI2                          Wu - Cross

1   Ichiro Sushi, additionally I spent $500 on battery and $500 on

2   maintenance due to the period of my employment.

3           You never mentioned that it was illegal to use

4   electric bicycle and then you start to use the regular bicycle

5   at some point of your employment, why is that?

6   A.  Well, after I went in initially in July, it was the boss

7   who required that electric bike or bicycle be used.  Sometime

8   in October the electric bike was stolen or lost.  And it so

9   happened that the government forbade electric bike usage in

10  November, so after that everything switched back to bicycle.

11  Q.  I don't know which year, never mentioned by year.

12  A.  2013.

13  Q.  So starting from November 2013 you started to use regular

14  bicycle?

15  A.  Correct, bicycle after November 2013.

16  Q.  So your declaration in paragraph 26, February 4, 2019, was

17  not accurate, correct?

18  A.  No.

19          THE COURT:  The electric bicycle that you used before,

20  a moment ago you said you did use an electric bicycle until it

21  was stolen and banned, is that correct?

22          THE WITNESS:  There are evidence to back up that it

23  was banned in October by the government.

24          THE COURT:  That's not my question.  Before that you

25  were using an electric bicycle, correct?

J4MTLI2                          Wu - Cross

1              THE WITNESS:  Yes.

2              THE COURT:  And was that your electric bicycle or one

3    supplied by the restaurant?

4              THE WITNESS:  Purchased on my own.

5              THE COURT:  Okay.  Go ahead.

6    BY MR. YAN:

7    Q.  Who asked you to use electric bicycles when you start to

8    work for the restaurant?

9    A.  Over here, Mr. Wang over here.

10   Q.  Why did he ask you to use the electric bicycle?  Why did he

11   ask you to use electric bicycle instead of the regular bicycle?

12   A.  Well, initially the restaurant wasn't too busy, we didn't

13   have that many delivery or delivery person, but so he wanted to

14   speed everything up to make it quicker.

15   Q.  And in your statement you never mentioned that your

16   electric bicycle was ever stolen.  Why is that?

17   A.  I felt that it was a personal matter.  I purchased it

18   personally.  I purchased it, the boss didn't purchase it.

19   Q.  Did you ask the Court to give you all the money entire year

20   from 2013 to 2014 to give you reimbursement for the battery and

21   the maintenance for the 500 hours something -- actually your

22   electric bicycle was stolen, why did you do that?

23   A.  After that, after it was stolen, I switched right away back

24   to bicycle.

25   Q.  Maybe if you -- I don't know whether you understand it, you

J4MTLI2                        Wu - Cross

1   gave a declaration February 26, 2019 you asked the Court do

2   give you money for reimbursement to purchase a battery and also

3   for maintenance during the entire period of time, $500.

4   However --

5           THE COURT:  Mr. Yan, just elicit facts and then make

6   your arguments.  It's a very confusing question and it's, as

7   far as I can tell, unnecessary.  You tried to establish the

8   time period he was using the bike.  If you want to make an

9   argument that they're not entitled to maintenance reimbursement

10  for a period of time after that, you can make that.  You don't

11  need to to have this confusing colloquy with the witness to do

12  this.

13          MR. YAN:  I will move on.

14          THE COURT:  Thank you.

15  BY MR. YAN:

16  Q.  Mr. Wu, did you receive tips when you worked for the

17  restaurant?

18  A.  Yes.

19  Q.  Did you receive all of the tips when you worked for the

20  restaurant?

21  A.  I'm not sure I understand.

22  Q.  Did you keep all of the tips you earned?

23  A.  Yes.

24  Q.  And how did you receive the payments when you worked for

25  the restaurant?

J4MTLI2                           Wu - Cross

1            MR. SCHWEITZER:  Payments in general or payments in

2   tips?

3            MR. YAN:  Payments other than tips.

4            THE WITNESS:  It was Mr. Wang who placed in a white

5   envelope with the name on top and the date on the bottom of the

6   envelope.

7   Q.  Did you have to sign a piece of paper when you received the

8   payment?

9   A.  I don't remember exactly.

10  Q.  Did you hear Mr. Hidalgo this morning -- strike that.

11           When you received payment did you have to sign to a

12  certain book indicating that you received the payments of the

13  money?

14  A.  I remember, yes, I heard it, yes.

15  Q.  Did you sign your name to the book when you received a

16  payment?

17  A.  That I don't remember.  It's been too long, I don't

18  remember.

19  Q.  And when you worked for the restaurant in 2013, do you

20  remember how many employees were in the restaurant?

21  A.  Approximately 16, 17, approximately, because they --

22  because I don't really know exactly, they have a group in the

23  front, another group of workers in the back.  I don't

24  necessarily check exactly how many people there were.

25  Q.  When you signed your signature to receive the payments, did

1     you notice how many employees get a piece of paper indicating

2     how many employees would receive payment?

3                MR. COOPER:  Objection.

4                THE COURT:  Just a moment.  Was there an objection?

5                MR. COOPER:  Objection.  He didn't testify he signed

6     it.

7                THE COURT:  I'll allow it.  You may answer.

8     A.  I'm not exactly sure.

9                MR. YAN:  Your Honor, may I approach plaintiff?

10               THE COURT:  In front of the mike please.

11               MR. YAN:  It's the plaintiff's Exhibit Number 11,

12    delivery receipt?

13               MR. SCHWEITZER:  Defendant's Exhibit 11.  That's

14    yours.

15               THE COURT:  Showing Plaintiff's Exhibit 11.

16               Mine only go up to 10.  Okay.  Plaintiff's Exhibit 11.

17    Is this for the witness?

18               MR. YAN:  Yes.

19    BY MR. YAN:

20    Q.  Have you ever seen these receipts?  These particular

21    receipts?

22    A.  These are delivery receipts.

23    Q.  Did you give these receipts to your attorney?

24    A.  That I don't remember exactly, however, these are delivery

25    receipts.

J4MTLI2                            Wu - Redirect

```
 1   Q.  My question was not about whether you saw these similar
 2   receipts in the restaurant, my question is did you ever give
 3   these receipts to your counsel to assist in litigation.
 4   A.  I don't remember exactly.
 5            MR. YAN:  Your Honor, I have no further questions.
 6            THE COURT:  All right.  Thank you.  We will take a
 7   short break and return for the redirect.
 8            (Recess taken)
 9            THE COURT:  Mr. Wu may return to the witness stand.
10            You may proceed, Mr. Schweitzer.
11   REDIRECT EXAMINATION
12   BY MR. SCHWEITZER:
13   Q.  Mr. Wu, how would you usually address your bosses, by their
14   names or by a title?
15   A.  I called them boss.
16   Q.  Who specifically do you call boss?
17   A.  Well, for example, Mr. Wang, since he is a younger man, he
18   would be called small boss, and the big boss we call the big
19   boss, big boss, and that's how we do it.
20   Q.  Was the person who you described as giving you a telephone
21   call the big boss?
22   A.  He informed me over the phone, because I had to ask who is
23   on the other end of the phone and exactly who it is.  And
24   through those conversations I was informed.
25   Q.  You were informed of what?
```

1          MR. XUE:  Objection, hearsay.

2          THE COURT:  I'll take it for what it may permissibly

3    be considered for.  Go ahead.

4          THE WITNESS:  Well, this is basically what was said, I

5    was asked why am I suing him, basically.

6          THE COURT:  And the "he," what is the name of the

7    person you're referring to as "he" here?

8          THE WITNESS:  That would be my big boss.

9          THE COURT:  And as you sit here now, do you know what

10   his name is?

11         THE WITNESS:  Chen something.  At the time when I was

12   told about it I knew at that time, but it's been so long, Chen

13   something.

14         THE COURT:  Okay.

15   Q.  What was the big boss' role in the restaurant?  What did he

16   do?

17   A.  You're talking about the big boss?

18   Q.  Yes.

19   A.  He rarely comes over, but perhaps at the end of the month

20   come over once and do a little work and leave.

21   Q.  When was the first time you saw the big boss present in the

22   restaurant?

23   A.  I think it was around July or August or actually around

24   August.

25   Q.  Of what year?

J4MTLI2                          Wu - Redirect

1   A.  2013.

2   Q.  And when was the last time you saw him present at the

3   restaurant?

4   A.  I think it might be August, September 2014, but it's been

5   so long I don't remember exactly.

6   Q.  And between August of 2013 and September of 2014, how often

7   did the big boss come to the restaurant?

8   A.  Between three and five visits per month, roughly.

9   Q.  And when he was there, what tasks, if any, would he direct

10  you to do?

11  A.  Tidy up anything that's out of order, when it is busy he

12  would say hurry up and make the delivery, those type of things.

13  Q.  What was Mr. Wang, who is seated at the defense table, what

14  was his role in the restaurant?

15  A.  Manage delivery personnel or the kitchen or the front

16  dining area, occasionally pick up the phone and act as the

17  cashier, accept money at the sushi bar.

18  Q.  And for what period of your employment was that Mr. Wang's

19  role at the restaurant?

20  A.  From when I first went in to work in 2013 until I left he

21  was doing all those.

22  Q.  How often was he present in the restaurant?

23  A.  He is there almost every day, and open the door at

24  11:00 a.m., and I see him quite often.

25  Q.  Did you perform work before Mr. Wang opened the door?

J4MTLI2                          Wu - Redirect

1    A.  No, no, before he opened the door I cannot enter.

2    Q.  What tasks, if any, would Mr. Wang direct you to do?

3    A.  He already make schedule and make arrangement already.

4    Q.  Who was it who told you you were hired to work at Ichiro

5    Sushi?

6    A.  That would be also Mr. Wang.

7    Q.  And who was it who physically gave you your pay each

8    payday?

9    A.  Mr. Wang that's present here.

10   Q.  Did anybody besides Mr. Wang ever physically give you your

11   pay?

12   A.  I'm not sure.

13   Q.  Did you receive tips?

14   A.  Yes.

15   Q.  Were there some customers who paid tips to you in cash?

16   A.  Rarely.

17   Q.  Were there some customers who paid tips electronically?

18          MR. YAN:  Your Honor, that's outside the scope of

19   cross.

20          THE COURT:  Overruled.

21   A.  Some did, some didn't.

22   Q.  Were you required to report your cash tips?

23   A.  Didn't say it directly, didn't say return all your tips,

24   but at the end of the day it was told to him.  He was told.

25          MR. SCHWEITZER:  May I approach?

J4MTLI2                          Wu - Redirect

1          THE COURT:  Showing?

2          MR. SCHWEITZER:  The last few pages of Exhibit 1,

3    pages 139 through 143.

4          THE COURT:  The last four pages.  You may.

5    Q.  I'm showing you an excerpt from Plaintiff's Exhibit 1.

6    Have you seen these documents before?

7    A.  I have.

8    Q.  What are these documents?

9    A.  These are records of take-out deliveries and their tips.

10   Q.  Do these records represent all of the tips you received

11   over the period from October 1 through October 6, 2014 or a

12   portion of the tips you received over that period?

13   A.  You mean 2014?

14   Q.  October 1 through October 6, 2014.

15   A.  October 1st to 6, correct?

16   Q.  Yes.

17   A.  Correct.

18   Q.  So do these represent a portion of the tips you received or

19   all of the tips you received during that period?

20   A.  Can I have the question again?

21   Q.  Do these records represent a portion of the tips you

22   received for the period October 1 through October 6, 2014 or

23   all of the tips you received during that period?

24   A.  Everything.

25   Q.  Including the cash tips?

J4MTLI2                          Wu - Redirect

1   A.  Yes.

2              THE COURT:  You're not moving those?

3              MR. SCHWEITZER:  They're already in, Exhibit 1 for

4   plaintiff was entered in its entirety.

5              THE COURT:  It was?

6              MR. COOPER:  Yes.

7              THE COURT:  No, it wasn't.  I admitted page 1, page 3,

8   and 4, page 5, I believe that's it.

9              MR. SCHWEITZER:  Your Honor, I believe you're

10  referring to Mr. Yan's Exhibit 1, I'm referring to Plaintiff's

11  Exhibit 1 referred to in the plaintiff's declaration that was

12  admitted in toto.

13             THE COURT:  None of you made any effort to distinguish

14  what any of these are that you're referring to.  I don't know

15  what you're talking about.  You say Plaintiff's Exhibit 1 and

16  I'm looking at Plaintiff's Exhibit 1.  How do I distinguish

17  that, which is in the book as Plaintiff's Exhibit 1, how do I

18  distinguish that from what you just mentioned?

19             I'm open to -- I did ask counsel to premark their

20  trial exhibits, and maybe you've done that, Mr. Schweitzer, I

21  don't know, I lost any semblance of certainty as to what is

22  being referred to.

23             MR. SCHWEITZER:  Just for completeness' sake, I guess

24  redundancy sake, at this point I would like to move those four

25  pages into evidence, that's 139 through 143.

J4MTLI2                         Wu - Redirect

1          THE COURT:  So we are talking about what is in the
2     courtesy copy binder for 14 CV 10242, correct?
3          THE WITNESS:  Yes.
4          THE COURT:  And Plaintiff's Exhibits, Exhibit 1, and
5     you're now seeking to move the admission of the documents that
6     were just discussed which are Bates Numbers 140 --
7          MR. SCHWEITZER:  139, 140, 141, 142.
8          THE COURT:  139, 140, 141 and 142.
9          MR. SCHWEITZER:  Sorry, and 143.
10         THE COURT:  So the last five pages of that document.
11         MR. SCHWEITZER:  Yes.
12         THE COURT:  Any objection?
13         MR. YAN:  No objection, your Honor.
14         THE COURT:  Thank you, they're admitted.
15         (Plaintiff's Exhibit 1, pages 139 to 143, received in
16     evidence)
17         MR. SCHWEITZER:  Thank you, your Honor.
18    BY MR. SCHWEITZER:
19    Q.  Mr. Wu, do you still have a copy of Plaintiff's Exhibit 1
20    on the witness stand?
21         THE COURT:  What is Defendant's Exhibit 1?  What were
22    they marked -- these are admitted documents?
23         MR. SCHWEITZER:  Yes.
24         THE COURT:  What were they marked as?
25         MR. YAN:  As Defendant Exhibit Number 1, page 1, 3, 4,

J4MTLI2                        Wu - Redirect

1    5 was not admitted -- received into evidence except page number

2    2.

3              THE COURT:  Go ahead.

4    A.  Which one is this?

5    Q.  Defendant's Exhibit 1, I'm going to refer specifically to

6    the documents Bates stamped D03 and D04.  That's the timecard.

7              THE COURT:  This is a part redundant document with

8    Plaintiff's Exhibit 1, is that what is going on?

9              MR. SCHWEITZER:  Yes, your Honor.

10             THE COURT:  Go ahead.

11   Q.  You were the person who punched in and punched out on this

12   timecard, correct?

13   A.  Yes.

14   Q.  And are the punches in and punches out on this card the

15   only times that you punched in and punched out on any time

16   recording system at Ichiro Sushi during the period October 1

17   through October 6, 2014?

18   A.  Yes.

19   Q.  Did Ichiro Sushi supply meals?

20   A.  They do.

21   Q.  How many per day?

22   A.  Basically two meals, lunch and dinner, but mostly I eat

23   lunch there and usually not dinner.

24   Q.  So you yourself would have one meal each day?

25   A.  Occasionally dinner, I won't say none or no dinner, but

1    rarely.

2    Q.  How long would it take you to eat lunch?

3    A.  Approximately between ten and 15 minutes.

4    Q.  How long would it take you to eat supper?

5    A.  Approximately the same, between ten, 15 minutes.

6    Q.  And during your meals were you on call to make deliveries?

7    A.  Correct.

8    Q.  Drawing your attention to page 5, this piece of paper

9    records you as having usually three 30-minute meals per day.

10   Is that the amount of actual meal time you had?

11   A.  No.

12   Q.  This piece of paper also records you as having been paid

13   $280 for the week from October 1st through October 6 of 2014.

14   Is that how much you were paid?

15   A.  No.

16   Q.  Was there any time recording system besides the time clock,

17   the mechanical time clock at Ichiro Sushi?

18   A.  No.

19   Q.  On cross you identified two females, one -- can you go into

20   more detail about who they were?

21   A.  I don't understand the question.

22   Q.  I will rephrase.  Are you familiar with the lady who

23   testified first today in the morning?

24   A.  I've seen her before.

25   Q.  In the restaurant, how did you address her, if you

J4MTLI2                          Wu - Redirect

1    addressed her?

2    A.  If I did, I would use manager, that type of word.

3    Q.  What was her role in the restaurant?

4    A.  Occasionally she would do things similar to a lady boss,

5    such as pick up the phone or answer the phone, help the wait

6    staff out when it's busy, use the cashier, ask the cashier,

7    accept money.

8    Q.  Would she give you directions?

9    A.  When it's busy, when Mr. Wang was not around, she would

10   occasionally, but rarely.

11   Q.  If you know, why was she in the restaurant so sparingly?

12   A.  She would come to do what the boss lady do when she is

13   around, so she would come when she's not around and do what she

14   usually do.

15   Q.  So there was another lady boss?

16   A.  I mean that type of role.

17   Q.  Was there another lady boss in addition to the person who

18   testified this morning?

19   A.  Yes, there's another one.

20   Q.  How often is she in the restaurant?

21   A.  She is there often.

22   Q.  And what would she do when she was there?

23   A.  Act as the cashier, and then pick up orders from the phone,

24   phone orders, help out the wait staff when they're busy, and

25   encourage the delivery personnel to quickly make deliveries.

J4MTLI2                          Wu - Redirect

1   Q.  Did she give you tasks to do when she was there?

2   A.  Yes.

3   Q.  Who gave you your tips at the end of each day?

4   A.  Most of the time that would be the lady boss in the front.

5   Q.  Most of the time.  Were there other times when it was

6   somebody else?

7   A.  Yes.

8   Q.  And who would it be then?

9   A.  Mr. Wang over here and the lady that we saw this morning.

10  Q.  And when you were given your pay, were you given any piece

11  of paper to keep?

12  A.  I don't remember that very clearly.

13  Q.  And when you were given your tips, were you given an

14  additional piece of paper to keep?

15  A.  No.

16  Q.  Who did you inform that you were leaving the job at Ichiro

17  Sushi?

18  A.  Mr. Wang who is here.  I also informed the front of the

19  house boss lady.

20  Q.  And which boss lady was that?  That is the one who

21  testified earlier today or the one not present in the courtroom

22  today?

23  A.  Well, not the person that's here this morning, but we all

24  call her lady boss or boss lady.

25          MR. SCHWEITZER:  Nothing more on redirect.

J4MTLI2                        Wu - Recross

1            THE COURT:  Thank you.  Mr. Xue, Mr. Cooper?

2            MR. COOPER:  I have one question, Judge.

3            THE COURT:  Go ahead.

4    RECROSS EXAMINATION

5    BY MR. COOPER:

6    Q.  In the month before you left your employment -- my name it

7    Peter Cooper.  In the month before you left your employment,

8    did the restaurant close for any period of time that you

9    remember?

10   A.  No.

11           MR. COOPER:  Thank you.

12   RECROSS EXAMINATION

13   BY MR. XUE:

14   Q.  Mr. Wu, you just changed your testimony again, you said

15   Jian Ping Chen pay you at redirect.  Is it Jian Ping Chen who

16   pay you or the lady boss who was not here today who paid you?

17   A.  Can you specify or clarify payment of what exactly?

18   Q.  When your attorney asked you --

19           THE COURT:  Rather than -- just ask the question, it's

20   so confusing to keep --

21   Q.  Which, who pay you wage, who pay you wage?

22   A.  Not the person that was sitting here earlier, rather it was

23   this Mr. Wang.

24   Q.  I also would like to --

25           MR. XUE:  Your Honor, first I would like to move into

1    evidence my Exhibit K, it's an affidavit signed by Jainhui Wu

2    dated September 3rd, 2015.

3          THE COURT:  So this is Ichiro Sushi Asian Fusion

4    defendant Exhibit K, is that right?

5          MR. XUE:  Yes, your Honor.

6          THE COURT:  That's the September 3rd, 2015

7    declaration, affidavit, apparently of Mr. Wu, is that right?

8          MR. XUE:  Yes, your Honor.

9          THE COURT:  Any objection?

10         MR. SCHWEITZER:  No.

11         THE COURT:  Okay.  Ichiro Asian Fusion Defendant

12   Exhibit K, which is the September 3rd, 2015 affidavit of

13   Mr. Wu, is admitted.

14         (Defendant's Exhibit Ichiro Asian Fusion Defendant

15   Exhibit K received in evidence)

16   BY MR. XUE:

17   Q.  In paragraph nine of this affidavit you stated defendant

18   Jing Li, known as lady boss, is defendant Jian Ping Chen's wife

19   and worked as receptionist and oversaw the restaurant at Ichiro

20   Second Avenue.  Do you see that statement?

21         Paragraph nine.

22   A.  Jian Ping Chen is the wife of Hui Chen?

23         THE COURT:  If you could translate paragraph nine,

24   please.

25   Q.  Paragraph nine of September 3rd, 2015 affidavit.  Do you

J4MTLI2                        Wu – Recross

1   have it?

2             THE INTERPRETER:  I'm not sure which, they're all

3   mixed up.

4             MR. XUE:  If I may give you mine.

5             THE COURT:  You may.

6             MR. XUE:  Paragraph nine.

7   Q.  Do you see that?

8   A.  Yes.

9   Q.  So in 2015 you Jian Ping Chen is a male, it's a man, right?

10  A.  I don't remember that, I don't remember.

11  Q.  And in fact, you never call her anything in your life,

12  right?

13            THE COURT:  Who is "her?"

14            MR. XUE:  Jian Ping Chen.

15  A.  No.

16  Q.  No, you never did, right?

17  A.  Salutation, hello or manager, something like that.

18  Q.  So if you called the manager when you were working -- if

19  you call Jian Ping Chen when you were working for Ichiro Sushi,

20  how come you don't remember if she is male or female?

21  A.  I cannot remember clearly because it's been -- it's a long

22  time ago.

23  Q.  So you don't remember whether you ever refer to her as

24  manager, correct?

25            MR. SCHWEITZER:  Objection.

J4MTLI2                          Wu - Recross

1           THE COURT:  Overruled.

2    A.  It was salutation, just say hello, call our manager, say

3    hello.

4    Q.  So in this restaurant, Ichiro Sushi restaurant, you have

5    Hui Chen as manager, you have Jing Li as manager, you have

6    Juhang Wang as manager, and you have Jian Ping Chen as manager,

7    so now four managers in this restaurant, is that correct?

8           THE INTERPRETER:  What are the other two?

9           MR. XUE:  Jian Ping Chen and Jing Li.

10   A.  Usually normally that's how we call them.

11   Q.  Mr. Wu, I ask one more time, is it correct today is the

12   first time ever in your life you saw Jian Ping Chen, the lady

13   who testified in the morning?

14   A.  No.

15          MR. XUE:  No more questions.

16          THE COURT:  Thank you.  Anything further.

17          MR. YAN:  Yes.

18          THE COURT:  Briefly.

19   RECROSS EXAMINATION

20   BY MR. YAN:

21   Q.  Mr. Wu, let me direct your attention to this page number 5

22   of the Defendant New Ichiro Sushi Trial Exhibit Number 1.  You

23   testified that you signed this document, correct?

24   A.  Yes.

25   Q.  You did not sign this document under any pressure from

1    anyone, correct?

2    A.  At that time I don't think so, shouldn't be.

3    Q.  No one forced you to sign this document, correct?

4    A.  It was Mr. Wang who brought it over for me to sign it.

5    Q.  But he did not force you to sign, if that's not correct,

6    correct?

7    A.  I did not.

8            MR. YAN:  Thank you, nothing further.

9            THE COURT:  All right.  You may step down.

10           I'm going to clean up.  We have ten minutes remaining

11   so we'll break for the day.  So just to recount where we are in

12   terms of the timing, based on what counsel had submitted in

13   their April 17, 2019 letter, the originally allocated time for

14   Mr. Schweitzer is five hours, Mr. Cooper at two hours, Mr. Yan

15   six hours, and Mr. Xue two and a half hours.  My law clerk will

16   confirm exactly what you have remaining, but I believe thus far

17   Mr. Schweitzer has used 51 minutes, Mr. Cooper, 16 minutes,

18   Mr. Xue 56 minutes, Mr. Yan, you've used two hours and 42

19   minutes.  So we'll double-check that timing and then do the

20   math, subtracting that, and we'll tell you what you each have

21   remaining going forward.

22           So we'll begin in the morning tomorrow at 9:30 with

23   the testimony of plaintiff Mr. Zhang.  Mr. Scott, my deputy,

24   has at least tried to maintain a record of all of the exhibits

25   that have been admitted.  Now it's been difficult because there

J4MTLI2

1    were several exhibits not premarked, but I've tried to indicate

2    clearly what you were showing witnesses and then moving in.  So

3    he'll print out a copy of what he has taken down as admitted

4    exhibits thus far, and I would like everyone to confirm in the

5    morning that we're all on the same page in terms of admitted

6    exhibits and what exactly we're referring to by those exhibits

7    so that we have a clear record going forward.

8            So I will address that first thing in the morning.

9    Mr. Scott will show you what he has done, everybody make sure

10   that you are in agreement with what has been admitted thus far.

11           Any matters to take up, counsel?

12           MR. COOPER:  No, Judge, thank you.

13           MR. SCHWEITZER:  No, Judge.

14           MR. XUE:  No, your Honor.

15           THE COURT:  Mr. Yan, anything?

16           MR. YAN:  Your Honor, can we use the remaining minutes

17   to discuss the parties' trial exhibits to shorten the time?  I

18   can -- for certain plaintiffs exhibits, I can consent to

19   certain exhibits, and also order plaintiff to consent to admit

20   Defendant's Ichiro Sushi trial exhibits.

21           THE COURT:  Why don't you confer, have a clear

22   accounting of what exactly you want to move in, and assuming

23   there's consent, you can move it in en masse and have clarity

24   as to what we're referring to.  That would be appreciated.

25   Confer where each other, see if you're in agreement, if there's

J4MTLI2

1    consent, if there's objections to take up, I will take those

2    up.  But do use the time to confer, and we can come in first

3    thing in the morning, and if there's agreement, have the

4    remaining documents come in.

5            MR. YAN:  Thank you, your Honor.

6            THE COURT:  Anything else to take up?

7            I will see everyone at 9:00.

8            (Adjourned to April 23, 2019 at 9:00 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      INDEX OF EXAMINATION

 2    Examination of:                          Page

 3    JIAN PING CHEN

 4    Direct By Mr. Xue . . . . . . . . . . . . . . 7

 5    Cross By Mr. Schweitzer . . . . . . . . . . .11

 6    Cross By Mr. Cooper . . . . . . . . . . . . .22

 7    Redirect By Mr. Xue . . . . . . . . . . . . .22

 8    ROBERTO HIDALGO

 9    Direct By Mr. Cooper . . . . . . . . . . . . .25

10    Cross By Mr. Yan . . . . . . . . . . . . . . .31

11    Cross By Mr. Xue . . . . . . . . . . . . . . .52

12    Redirect By Mr. Cooper . . . . . . . . . . . .54

13    Recross By Mr. Yan . . . . . . . . . . . . . .62

14    JAINHUI WU

15    Direct By Mr. Schweitzer . . . . . . . . . . .65

16    Cross By Mr. Xue . . . . . . . . . . . . . . .71

17    Cross By Mr. Yan . . . . . . . . . . . . . . .85

18    Redirect By Mr. Schweitzer . . . . . . . . . 118

19    Recross By Mr. Cooper . . . . . . . . . . . 129

20    Recross By Mr. Xue . . . . . . . . . . . . . 129

21    Recross By Mr. Yan . . . . . . . . . . . . . 132

22

23

24

25
```

```
 1                        PLAINTIFF EXHIBITS

 2    Exhibit No.                                     Received

 3      Li 17   . . . . . . . . . . . . . . . . . .22

 4      12 and 12A   . . . . . . . . . . . . . . .30

 5      1 and 18   . . . . . . . . . . . . . . . .69

 6      1, pages 139 to 143,   . . . . . . . . . . 124

 7                        DEFENDANT EXHIBITS

 8    Exhibit No.                                     Received

 9      Ichiro Asian Fusion O   . . . . . . . . . . .10

10      Ichiro Sushi 13   . . . . . . . . . . . . .53

11      New Ichiro Sushi 16   . . . . . . . . . . .99

12      New Ichiro Sushi Exhibit 1, page 1   . . . . 108

13      New Ichiro Sushi 1, pages 3 and 4   . . . . . 110

14      New Ichiro Sushi 1, page 5,   . . . . . . . . 111

15      Ichiro Asian Fusion Defendant Exhibit K   . . 130

16

17

18

19

20

21

22

23

24

25
```